DAVID W. QUILLEN, Petitioner below, Appellant, v. WALTER W. BETTS, EDGAR S. STAYER and CHARLES D. HOLZMUELLER, Board of Trustees of Sussex County, Respondents below, Appellees.

*(July* 17, 1953.)

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, J. J., sitting.

*Everett F. Warrington* and *Daniel J. Layton, Jr.,* for appellant.

*H. Albert Young,* Attorney-General, *Januar D. Bove, Jr.,* and *John J. McNeilly,* Deputy Attorneys-General, for appellees.

Supreme Court of the State of Delaware, No. 19, 1953.

SOUTHERLAND, C. J.:

This appeal concerns the admission to bail of a person indicted for a capital offense.

The facts and the proceedings below are as follows:

On December 8, 1952, Quillen, the petitioner below and appellant here (herein called "defendant"), shot and wounded one Banks, was arrested and charged with assault with intent to murder, and was admitted to bail. On January 2, 1953, Banks died and on January 5 defendant was charged with murder in the first degree. It was arranged that the Superior Court should hear and determine the matter of bail. On January 6 defendant petitioned the court to be admitted to bail, asserting that there was absence of proof that death was the result of the wound inflicted by him, and that there were facts indicating that he was at most guilty of manslaughter. The Deputy Attorney General did not oppose the application, apparently because the State's investigation of the matter was then incomplete. Defendant was thereupon admitted to bail in the sum of $10,000.

On February 2 an indictment for murder in the first degree was returned against defendant. The Deputy Attorney General moved to commit the defendant to jail, but after a discussion withdrew the motion, apparently believing that if he pressed it he would assume the burden of sustaining it with evidence of the facts. The case was then continued to the April Term, and defendant remained at liberty on the bail theretofore given.

At the April Term defendant moved for another continuance. On April 9, the court denied the motion and set the trial for May 18. The President Judge then inquired whether the State had any application respecting the matter of bail. After some explanatory remarks the Deputy Attorney General said that he had not. Subsequently various motions were filed by defendant, including a motion to quash, which was denied on May 16. On the same day a motion to continue the case to the June Term was granted. Thereupon the State moved to recall the bail and commit the defendant to jail.

The State's motion was set for May 20 and was heard on that date. The court ruled that the indictment had raised a strong presumption of guilt and that it was the duty of the de-

fendant to go forward with evidence to overcome the presumption. Defendant's counsel were not ready to present evidence, but did not ask for an adjournment. They took the position that the "attitude" of the Deputy Attorney General and the circumstances of the case had the effect of rebutting the presumption, and that the burden was on the State to support its motion. The court then discharged the bail and committed the defendant to jail.

On the same day defendant filed a petition for a writ of habeas corpus under 10 *Del. C.* § 6911, averring that his commitment was illegal "because of the lack of positive proof and great presumption of his guilt, and further because his admission to bail before and after indictment was consented to by the Attorney General," and that under these circumstances he had the constitutional right to be admitted to bail. A hearing on this petition was had on May 22, and the petition was dismissed. By order of court the record of the hearing of May 20 upon the State's motion was made a part of the record in the habeas corpus proceeding.

Defendant appealed from the order dismissing the habeas corpus petition. We heard argument on June 12 and on the same day entered an order affirming the order of the Superior Court. This opinion sets forth the reasons for our conclusion.

In this Court defendant made several contentions, which may be stated as follows:

1. The constitutional right to bail of one charged with a capital offense exists both before and after indictment; and the applicable Delaware statute, which appears to limit the right to bail in a capital offense to the period before indictment found, is unconstitutional.

2. Once bail was accepted before indictment and continued after indictment with the approval of the State, the bail could not be recalled in the absence of surrender by the sureties or, perhaps, reasonable apprehension of the flight of the defendant from the jurisdiction.

3. Under the provisions of 11 *Del. C.* § 2104(a), concerning recognizances in criminal cases, the court was without power to discharge the bail and commit the defendant.

Defendant's first contention raises the question of the proper construction of Section 12 of Article I of our State constitution, which provides:

"All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is positive or the presumption great; * * *."

This constitutional provision goes back at least to 1792, *Constitution of* 1792, Art. 1, § 12. It may have been derived from a similar provision in the *Pennsylvania Constitution of* 1790, Art. IX, §14, which also appears in the *Pennsylvania Constitution of* 1776, Ch. II, § 28. These provisions are perhaps traceable to early colonial laws applicable to Pennsylvania and "the three lower counties" (Delaware).[1]

Does the finding of an indictment charging a capital offense raise a conclusive presumption of guilt for the purpose of allowing bail? In states having constitutional provisions similar to ours differing answers to this question have been given. A few states hold that the presumption is conclusive; but the majority view is that admission to bail after indictment upon a capital case is still within the sound discretion of the trial court. See the cases collected in the annotation in 39 *L. R. A., N. S.,* 752, 760.

We are cited to only one Delaware decision upon the matter. In *State v. Koester,* 5 *W. W. Harr.* (35 *Del.*) 258, 162 *A.* 513, the Court of General Sessions held that the presumption of guilt arising from the indictment was great and should prevail unless the circumstances are special and extraordinary.

---

[1]"That all persons shall be Bailable by sufficient Sureties, unless for Capital Offenses, where the proof is evident, or the presumption great; * * *." "Charter of William Penn", etc. (Harrisburg, 1879), p. 120; Laws passed at an assembly at Chester, Dec. 7, 1682; re-enacted in 1693, op. cit. p. 227. The three lower counties on the Delaware were annexed to Pennsylvania by the Act of Union passed the same date. *Vol.* 1, *Laws of Del., App.* p. 8.

We observe, however, that the court in the *Koester* case did not consider the statute relating to the matter. This statute provides, 11 *Del. C.* § 2106:

"A capital offense shall not be bailable; but the Superior Court may admit to bail a person accused of such offense before indictment is found, if, upon full inquiry, it appears that there is good ground to doubt the truth of the accusation. On such inquiry, the justice, or officer who committed the accused, shall be summoned, and care shall be taken to hear the proper witnesses."[2]

Defendant says that this statute, which appears to limit the right to bail to the period before indictment found, is unconstitutional. It is to be noted that under the colonial act referred to in the footnote capital offenses were not bailable at all; whereas, by the act of 1829 they were made bailable, in the discretion of the court, before indictment only. It might be argued that the General Assembly of 1829 took the view that an indictment raised, for the purposes of admission to bail, a conclusive presumption of guilt.

If, as defendant contends, the constitution gives a right to bail after indictment in a capital case, in the discretion of the court, it is difficult to reconcile the statute with the constitution; whereas if no such right exists the statute is in entire harmony with the constitution.

In the instant case we found it unnecessary to determine the question raised by defendant's first contention. This was because the Attorney General did not ask us to overrule the *Koester* case and hold conclusive the presumption of guilt from

---

[2]The statute was enacted in substantially its present form in 1829. *Vol. 7, Laws of Del.,* Ch. 121. It superseded a colonial act providing as follows:

"That all prisoners shall be bailable by one or more sufficient sureties to be taken by one or more of the judges or justices that have cognizance of the fact, unless for such offenses as are or shall be made felonies of death by the laws of this government, * * *." *Act of 4 Geo. II, Vol. I, Laws of Del.,* Ch. 58a; *Vol. I, Laws of the Government of New-Castle, Kent and Sussex upon Delaware,* p. 108.

indictment on a capital offense. Accordingly, we expressly refrain from either approving or disapproving the ruling in the *Koester* case, and shall assume, without deciding, that bail is allowable after indictment in the discretion of the court.

Upon this assumption the Attorney General contended that the court below committed no error, since it was the duty of defendant to present evidence sufficiently impelling to induce the court to grant bail.

We therefore turn to defendant's second contention, that the consent of the prosecuting officer to his admission to bail, both before and after indictment, had the effect of rebutting any presumption that might arise from the finding of the indictment and placed upon the State the duty to go forward and adduce positive proof of guilt.

Defendant made the following argument: The prisoner was admitted to bail before indictment with the consent of the Deputy Attorney General, and after indictment bail was continued with the latter's approval. There having been no showing by the State that there was any reason to doubt defendant's appearance at the trial, the legal situation was the same as if the accused had first been admitted to bail after indictment. In such a situation, it was said, the admission to bail is *res judicata* as to the State or at least the State is estopped to move to recall the bail and commit the defendant.

We did not agree with this reasoning. The defendant was originally admitted to bail before indictment. The finding of the indictment created (at the least) a *prima facie* presumption of guilt. The state had the right to rely on this presumption, and when defendant sought to remain at liberty on bail, the burden was upon him to rebut the presumption by evidence. This he declined to do, although the court made it quite clear that it would give consideration to an application to adjourn the hearing. We think the court correctly ruled that it was the duty of the defendant to go forward with proof.

■ The contention that the consent of the prosecuting officer to the continuance of bail after indictment was *res judicata* is, we think, without merit. The authorities cited do not sustain it. If there had been a hearing after indictment, a finding of fact upon the evidence, and an order to admit the defendant to bail, and if thereafter the State had moved to revoke the bail, a different question might be presented.

■■ Defendant also suggested that the State's failure for three months to press the motion to commit raised some sort of estoppel against the State. It is certainly open to question whether considerations of estoppel have any place in the field of the law which so nearly touches the public interest. This consideration apart, it is clear that the defendant suffered no injury from being allowed his liberty for three months after indictment. Moreover, in determining the right to bail, or in fixing the amount of bail, the views of the prosecuting officer have some weight with the court (6 *Am. Jur.*, Bail and Recognizance, § 34) ; but they are not conclusive. The court below correctly ruled that it had an independent duty in the matter. We think this contention is without substance.

Defendant's third contention was based upon the provisions of 11 *Del. C.* § 2104(a), which read as follows:

"No person who has been charged with having committed a criminal offense, and who has been held by recognizance to appear and abide by the judgment of any court in any of the counties of this State, shall be committed to prison pending trial for such offense, either before or after pleading to an indictment or information. Such recognizance shall remain and be in full force and virtue until final judgment, unless the accused person has been surrendered by his bondsman."

Defendant argued that once a person charged with any crime, including a capital offense, has been admitted to bail the court under this statute may not recall the bail and commit him unless surrendered by his bondsman or unless there is reason to believe that he may flee the jurisdiction.

This contention is based on a misconception of the purpose and effect of the statute. At common law in Delaware a recognizance in a criminal case was conditioned only for the appearance of the defendant at the next term of court; if the case was continued and the recognizance not respited the bail was discharged. *State v. Roop,* 1 *Marv.* 535, 41 *A.* 196. Likewise if the defendant was not indicted by the Grand Jury the defendant and his bondsman were discharged. *In re Tomer,* 3 *Penn.* 31, 50 *A.* 268.

██ ██ We think the primary purpose of the statute was to keep a recognizance in a criminal case in full force and effect until final judgment. A secondary purpose may well have been to modify the common law rule that after trial had begun the court had inherent authority to commit the defendant to custody. See annotation in 25 *Ann. Cas.* 211; *U. S. v. Rice, C. C.,* 192 *F.* 720. We are clearly of the opinion that the statute invoked by defendant does not attempt in any way to deal with the subject of granting or denying bail or of increasing or decreasing bail. These matters are left to the discretion of the court. Defendant apparently conceded that the court might in this case have committed the defendant upon a showing of reasonable apprehension of flight. At all events, this is certainly correct and is in itself an answer to the construction sought to be put upon the statute. Moreover, it would logically follow from defendant's contention that after a conviction of murder in the first degree a prisoner who had been allowed bail could not be committed pending a motion for a new trial and sentence —a result hardly to be seriously considered.

For the foregoing reasons we affirmed the order of the Superior Court dismissing the petition for *habeas corpus.*