FISCHER *v.* BALL, SHERIFF OF PRINCE GEORGE'S COUNTY

[No. 217, October Term, 1956.]

518

*Decided March 14, 1957.*

The cause was argued before Brune, C. J., and Collins, Henderson, Hammond and Prescott, JJ.

*Joseph B. Simpson, Jr.,* with whom were *A. Gwynn Bowie* and *Oscar R. Duley* on the brief, for appellant.

*James H. Norris, Jr., Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Blair H. Smith, State's Attorney for Prince George's County,* on the brief, for appellee.

Brune, C. J., delivered the opinion of the Court.

Francis A. Fischer, the appellant, was arrested on a charge of murder. On August 14, 1956, which was prior to his indictment, he was released on bail of $8,000 by the Circuit Court for Prince George's County. Subsequently he was indicted for murder. Thereafter, when arraigned on October 15, 1956, he entered pleas of (1) not guilty and (2) of not guilty by reason of insanity at the time of the commission of the alleged crime. After the arraignment he was denied bail. He then sought to obtain his release on bail through *habeas corpus* proceedings. A hearing was held on his petition on October 18, 1956, at the conclusion of which he was again denied bail and was remanded to the custody of the appellee, who is the Sheriff of Prince George's County. Fischer sought and was granted leave to appeal from the order denying bail and remanding him to custody. His appeal was advanced for argument in this Court.

The indictment against Fischer is in a form authorized by statute (Code, 1951, Article 27, Section 710). Under such an indictment, a defendant may be found guilty of murder in the first degree. If so (unless there is a jury trial and the jury adds to its verdict the words "without capital punishment"), the death penalty may be imposed. The case is, therefore, a capital case, notwithstanding that, under this form of indictment, the defendant, if convicted, might be found guilty of an offense (second degree murder or manslaughter) not carrying the death penalty.

The appellant contends (1) that he is entitled to release on bail as a matter of right and (2) that even if the matter lies in the discretion of the trial judge, it was an abuse of such discretion to deny him bail.

The case seems to be one of first impression in this Court, and there is no controlling statute.

Stephen, in his *History of the Criminal Law of England* (1883), Vol. I, page 233, states that: "The right to be bailed in certain cases is as old as the law of England itself, * * *." It was first dealt with by statute in 1275 (3 Edw. 1, c. 12), which dealt with prisoners being admitted to bail by the sheriff; but as time went on, the powers of the sheriff were transferred to justices of the peace. The latter were authorized to admit to bail persons arrested on suspicion of felony. By the time of the enactment of two statutes dealing with bail in the reign of Philip and Mary (1 & 2 P. & M., c. 13 (1554) and 2 & 3 P. & M., c. 10 (1555)), the power to admit to bail which the sheriffs once had was exercised by justices of the peace. All three of the statutes referred to (except for certain relatively minor provisions of the first of them) are among the British Statutes in force in Maryland. (See *Alexander, British Statutes in Force in Maryland,* Coe's Ed. Vol. 1, 74, 489, 495.) As a result of these statutes the law of Maryland at the time of the Revolution was substantially the same as that of England, as stated in *Blackstone's Commentaries,* Vol. IV, (1769), pp. 295-297, as to the cases in which justices could admit a prisoner to bail before trial and those in which they could not. See also *Latrobe's Justices' Practice,* 2nd Ed. (1835), §§ 1577-1582. Among the cases

in which justices could not grant bail were and are cases of murder. Blackstone states that "no justice of the peace can bail, 1. Upon an accusation of treason; nor 2. Of murder; nor 3. In case of manslaughter, if the prisoner be clearly the slayer, and not barely suspected to be so; or if any indictment be found against him; * * *." *Latrobe,* § 1577, apparently referring to a later edition of Blackstone, but citing 4 Bl. Comm. 298 as his authority, lists murder and homicide as instances in which a justice of the peace cannot admit the accused to bail and says this as to homicide (other than murder): "Homicide, if the person be clearly the slayer, and not merely suspected to be so: It appears that if the killing has been by misadventure, or in self-defence, a justice may safely liberate the party on his finding sufficient sureties."

Blackstone states (*op. cit.,* p. 296) that: "Lastly, it is agreed that the court of king's bench (or any judge thereof in time of vacation) may bail for any crime whatsoever, be it treason, murder or other offense, according to the circumstances of the case."

Code (1951), Article 42, Section 14, dealing with *habeas corpus* proceedings, after providing for the release of a person found to be unlawfully detained, continues: "or if the court or judge shall deem his detention to be lawful and proper he shall be remanded to the same custody, or admitted to bail if his offense be bailable, and if bailed the court or judge shall take a recognizance to answer in the proper court and shall transmit the same to such court." Neither this Section nor Section 41 of Article 26 of the Code (1951), which, *inter alia,* authorizes a judge to fix bail for any person arrested on an indictment and imprisoned during a recess of the court "if it be a bailable case," undertakes to define what is a bailable case. There is no statute applicable to the powers of a judge to admit an accused person to bail comparable to the Statute of Westminster the First, 3 Edw. 1, c. 12, referred to above, which defines the cases in which a justice of the peace may or may not grant bail. Nor does our Constitution deal with that subject. It says only (Article 25 of the Declaration of Rights): "That excessive bail ought not to be required * * *."

The subject has been surveyed by Professor Orfield in his work on *"Criminal Procedure from Arrest to Appeal"*, published in 1947 by the New York University Press under the auspices of The National Conference of Judicial Councils as a part of the Judicial Administration Series. Chapter III is devoted to the subject of "Bail", and the portions directly pertinent to this case will be found at pp. 107-113. Professor Orfield states that thirty-five states have constitutional provisions and one has a statute which "have altered the common law and guarantee that 'All persons shall be bailable by sufficient sureties except for capital offenses where the proof is evident or the presumption great.'" Four states, he says, except only murder and treason from the constitutional guarantee. He then lists Georgia, Maryland and New York as having statutes which provide that bail is a matter of right in misdemeanor cases. The existence of such a statute would at least suggest an implication that the law is otherwise with regard to felonies. However, Professor Orfield does not cite the Maryland statute to which he refers. The only statute of the kind that has come to our attention is not a statewide Act, but is a Public Local Law applicable to Baltimore City, codified as Section 193 of Flack's 1949 Edition of such laws, which was first enacted as a part of Chapter 138 of the Acts of 1898, and was slightly amended in 1941. This pertinent Section deals with the powers and duties of police magistrates of the City of Baltimore with regard to bail. It requires them to admit to bail all persons charged with misdemeanors not punishable by confinement in the penitentiary, prohibits them from accepting "bail for persons charged with manslaughter [other than manslaughter arising from the operation of a motor vehicle], murder or any offense the punishment for which may be death", and gives them discretionary power to release on bail persons charged with other felonies or with misdemeanors not subject to punishment by confinement in the penitentiary. Our researches have disclosed no comparable statewide,[1] nor any comparable

---

1. There is a statewide statute dealing with bail after conviction and pending appeal. Code (1951), Art. 5, Sec. 86. Under it, in cases

local statute applicable to Prince George's County. None of the provisions of Chapter 138 of the Acts of 1898 undertakes to specify the kinds of cases in which the Criminal Court of Baltimore (which has jurisdiction in criminal cases corresponding to that of the Circuit Courts of the several Counties) shall or may admit to bail persons charged with criminal offenses.

*Hochheimer on Criminal Law,* 2nd Ed., Sec. 78, p. 94, states: "The superior courts may admit to bail in all cases. In capital cases, 'if the proof is evident and the presumption of guilt great,' bail should be denied by the courts." This statement of the rule is consistent with both the common law rule and the rule prevailing in those States which, by constitution or statute, allow bail in all cases, other than capital cases in which the proof is evident or the presumption of guilt is great. See *Orfield, op. cit.,* pp. 108-109; 8 *C. J. S.* 34 b(2)(b); 6 *Am. Jur.* (Rev. Ed.), *Bail and Recognizance,* Sec. 29; Annotation, 39 *L. R. A. N. S.* 752, at 754; Annotation on *"Rape As Bailable Offense",* 118 *A. L. R.* 1115. There is, however, a division of opinion as to what is sufficient to constitute evident proof or a great presumption of guilt, and as to who must bear the burden of proof with regard thereto.

In three States, as Orfield points out, the indictment alone is considered conclusive in meeting the test of sufficiency of proof, in seven it is considered as establishing a rebuttable presumption, and in four it is given no weight at all. (This last result also seems to have been reached by the highest court of one other State in a decision cited by Orfield.) Most, if not all, of the differences of opinion seem to have arisen as a result of different interpretations of the usual constitutional provisions.

Since Maryland has no constitutional or statutory provisions governing the question or changing the common law as to bail in capital cases before trial, any extended review of

---

not punishable by death or by imprisonment in the penitentiary, the accused is "entitled to remain on bail, and in other cases not capital" bail is discretionary with the trial court. It makes no provision for allowing bail in capital cases.

decisions based upon the constitutions (or statutes) of other states would seem of little help.

The common law rule in capital cases (to which this opinion is confined) is that bail is in the discretion of the trial court. We think that under Article 5 of the Maryland Declaration of Rights, this rule of the common law, in which no constitutional or statutory change has been made, remains in force in this State. See *State v. Buchanan,* 5 Harris & J. 317, at 356-358 (a conspiracy case). A like view prevails in other States where there has been no constitutional or statutory provision altering the common law. See *Orfield, op. cit.,* p. 108 (stating that "In five states, Massachusetts, New Hampshire, North Carolina, Virginia, and West Virginia, there is enforced the common law rule allowing almost unlimited discretionary power in granting or refusing bail.") ; and 39 *L. R. A. N. S.* 752, at 754.

The subject of bail pending trial in a capital case was recently considered by the Supreme Court of our neighbor State of Delaware in *Quillen v. Betts* (Del.), 9 Terry 93, 98 A. 2d 770. Delaware had a constitutional provision (of the usual general type spoken of by Orfield) that "All prisoners shall be bailable * * *, unless for capital offenses when the proof is positive or the presumption great * * *." The court found it unnecessary to determine whether or not, under this constitutional provision the presumption of guilt arising from an indictment for a capital offense was conclusive on an application for bail. It assumed, without deciding, that bail was allowable in the discretion of the court after an indictment for such an offense had been found.

In that case, as in the case before us, the accused had been admitted to bail before indictment. (There, he was also continued on bail, after the prosecuting attorney withdrew a motion for his commitment, for some time after indictment.) As to the effect of the indictment, the Delaware Court said (98 A. 2d at 773) : "The defendant was originally admitted to bail before indictment. The finding of the indictment created (at the least) a *prima facie* presumption of guilt. The state had the right to rely on this presumption, and when the

defendant sought to remain at liberty on bail, the burden was upon him to rebut the presumption by evidence."

The views of the Supreme Court of Delaware in *Quillen v. Betts, supra,* are, we think, in accord with the weight of authority and with the more persuasive reasoning both as to the indictment constituting a sufficient basis for the denial of bail (at least if no evidence is adduced to controvert it) and as to the burden of proof.

The accused vigorously attacks the view that the indictment creates a conclusive presumption of guilt for purposes of a bail hearing. He urges that this rule was based upon the secrecy of grand jury proceedings and the consequent inability of the court to know the evidence upon which the indictment was founded. He then points out that under Section 336 of the Code of Public Local Laws of Prince George's County, a record is made by a stenographer of the proceedings before the grand jury of that County, that a transcript thereof is furnished to the State's Attorney and that its production may be required by order of the Circuit Court. For purposes of this case it may be conceded or assumed that the indictment does not create a conclusive presumption and hence that it did not preclude the trial judge, if he saw fit to do so,. from exercising his discretionary power to release the accused on bail. The question then becomes one of the proper exercise of that discretionary power, and the fact of the indictment for a capital offense has a significant bearing thereon. See, in addition to the authorities already referred to, 6 *Am. Jur.* (Rev. Ed.), *Bail,* §§ 38-40. In the latter of these Sections it is stated (at p. 79): "It has * * * been generally established that the findings of the grand jury must be considered as prima facie correct, so that the burden is thrown upon the applicant to show facts upon which the court may properly allow bail, for an indictment returned by properly constituted authorities stands with all presumption in favor of its truth, until its force is broken by showing that the grand jury acted upon insufficient evidence."

This the accused did not even attempt to do. The only evidence on his behalf was presented through a stipulation that a witness would give testimony indicating that the de-

fendant was a good bail risk, because he had behaved as such during the period when he was free on bail in this case. There was no effort on his part to present any evidence bearing upon the facts out of which the indictment grew. His effort was to force the State to prove its case on the *habeas corpus* bail hearing substantially as it would be bound to do at the actual trial. Assuming that the trial judge might have required the respondent (or the State) to do so, we find nothing in the record to indicate that the trial judge abused his discretion in not requiring such proof.

Because the burden of proof rested upon the accused to rebut the presumption created by the indictment, we think it unnecessary to consider the admissibility of the evidence offered by the respondent at the hearing on the accused's petition for a writ of *habeas corpus,* which was excluded on the accused's objection. This evidence, the exact tenor of which is not stated in the record, consisted of statements by witnesses who had appeared before the Grand Jury made in the presence of counsel for the State and counsel for the accused. We understand it to be agreed that in the form in which it was offered it would not have been admissible at the actual trial of the accused. After conviction, the trial court may take into consideration in determining the sentence to be imposed, in addition to evidence presented during the trial, "evidence, by affidavit or otherwise, in aggravation or mitigation of punishment." *Murphy v. State,* 184 Md. 70, at 82, 40 A. 2d 239. See also *Reid v. State,* 200 Md. 89, at 94, 88 A. 2d 478. (Both were capital cases.) Whether a similar rule as to evidence is or should be applicable when release on bail is sought before trial does not require decision in the present case, and we express no opinion thereon.

We think that it was within the discretion of the trial court to take into consideration the recommendation of the State's Attorney that bail be not continued and that the accused be committed. *Quillen v. Betts, supra.*

We thus have a situation in which the indictment alone for a capital offense created a sufficient presumption of guilt to warrant the denial of bail, in which the burden of proof to overcome that presumption rested upon the accused and in

which he offered no evidence tending directly to offset it. Assuming, as we do, that it was within the discretion of the trial court to allow or deny bail in this case, we find no abuse of such discretion. The order dismissing the accused's petition and remanding him to the custody of the Sheriff will, therefore, be affirmed.

*Order affirmed, with costs.*