**Franklin C. FORAKER, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted April 28, 1978.

Decided June 30, 1978.

Rehearing Denied Sept. 13, 1978.

---

Stephen P. Casarino, Wilmington, and Jerome O. Herlihy of Herlihy & Herlihy, Wilmington, for defendant below, appellant.

Charles M. Oberly, III, State Prosecutor, and Gregg E. Wilson, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

McNEILLY, Justice:

Defendant appeals his conviction by a Superior Court jury of murder in the first degree (11 *Del.C.* § 636), and conspiracy in the first degree (11 *Del.C.* § 513). By order of this Court dated March 21, 1978, the cause was remanded to the Superior Court so that the record could be supplemented by further findings and conclusions. Upon the State's petition for re-argument, this Court by order dated April 28, 1978, stayed all proceedings in the Superior Court. We are now of the opinion that all issues may be resolved upon the present record. We shall treat the questions raised by defendant seriatim, but finding no error, we affirm.

## I

On January 26, 1975 at 11:15 A.M., defendant, Franklin C. Foraker, voluntarily appeared at the Newark Police Department headquarters and confessed to Desk Sergeant Norman Delp that he had killed a girl but stated he did not know her name. Defendant also stated that he had disposed of the body by throwing it over a bridge railing into a river located on a country road near Newark.

Sergeant Delp contacted another Newark police officer. When the second officer arrived defendant was advised of his legal rights in accordance with the dictates of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant specifically declined the assistance of an attorney, and related a story of how he and his girlfriend picked up the victim under pretense of taking her to see her boyfriend, Sweetman. Defendant identified the victim as "Margaret" and stated that after

leaving his girlfriend at her house, a second man, hidden behind the front seat, ordered him at gunpoint to strangle the victim with a rope. A third police officer was called to the police station, and upon his arrival defendant was again warned of his *Miranda* rights. Defendant stated that he understood his rights, but he still wished to confess to the murder. This time, in a taped interview, defendant explained that he had strangled Margaret, whose last name he did not know, and had thrown her body over a bridge. Again defendant asserted that he had committed the crime because he was coerced to do it at gunpoint. He further indicated he was confessing so that Barbara Jordan, his girlfriend, who he claimed had been kidnapped, would be released.

After the taped interview, defendant was asked if he would show the police where the murder had occurred, and where the body had been placed. He agreed, and willingly accompanied the police on the search, but was unable to locate the area of the murder. Since it appeared to the Newark police that in all probability the murder had taken place outside of the Newark city limits, they contacted the Delaware State Police to aid in the investigation.

Defendant was turned over to the State Police who again warned him of his *Miranda* rights. Expressing a willingness to cooperate with the State Police, defendant accompanied them in a second search for the bridge off which defendant claimed he threw the body. One of the State Police officers involved in the investigation later testified that even if defendant had not cooperated and had sought to leave their custody, he would not have been allowed to do so, although he stated that he was only holding defendant for a two-hour detention pursuant to 11 *Del.C.* § 1902.[1] The State

---

1. 11 *Del.C.* § 1902 reads as follows:

§ 1902. Questioning and detaining suspects.

(a) A peace officer may stop any person abroad, or in a public place, who he has reasonable ground to suspect is committing, has committed, or is about to commit a crime, and may demand of him his name, address, business abroad, and where he is going.

(b) Any person so questioned who fails to identify himself or explain his actions to the

satisfaction of the officer may be detained and further questioned and investigated.

(c) The total period of detention provided for by this section shall not exceed 2 hours. The detention is not an arrest and shall not be recorded as an arrest in any official record. At the end of the detention the person so detained shall be released or be arrested and charged with a crime.

Police were aware of the disappearance of a person named Margaret Essick and had the names of Barbara Jordan and Frank Foraker as possible sources of information, factors which lent credibility to defendant's story. Enroute to several bridges which the police felt may have been the one described by defendant, the defendant for a fourth time admitted strangling the victim. Defendant could not identify the bridges shown to him, and the police and defendant traveled to Delaware State Police Troop 2 outside of Newark. Defendant was informed that he had admitted committing a crime that was punishable by death, and that upon his request he could have an attorney present at any further questioning. Defendant was then arrested for the murder of Margaret Essick, and, thereafter, he gave a fifth statement describing the crime and admitting guilt. Defendant was placed in a detention cell while the investigation continued.

In the early evening hours of January 26th defendant was given a polygraph examination. He began to change his story, producing an indecisive result on the polygraph. However, the test seemed to indicate that defendant was lying when he stated he had murdered a young woman. At approximately the same time as the test was being administered, Barbara Jordan was located by the police in Chichester, Pennsylvania. Ms. Jordan recited an incredulous tale of kidnapping, rape and attempted murder to police.

At approximately 10:15 the same night, the police involved in the investigation met at Delaware State Police Troop 2 to discuss the situation. Because of the absence of a body, defendant's multiple confessions and his inability to locate either the body or the situs of the crime, and Barbara Jordan's fantastic tale, the police suspected that the entire incident may have been a hoax. At 12:40 A.M. on January 27th defendant stated that his earlier statements were lies, as they were a ruse to provide Margaret Essick an opportunity to run away with a boyfriend. Defendant was then charged

with filing a false complaint (see 11 *Del.C* § 1245), and taken before a Justice of the Peace for his initial appearance and so that bail might be set.

On January 31, 1975, the body of Margaret Essick was discovered in a creek in nearby Maryland. The information concerning the finding of the body and a Maryland warrant charging defendant with murder was transmitted to Delaware police. Detective Thomas Cloud of the Delaware State Police then contacted the local police in Oxford, Pennsylvania, defendant's place of residence. Arrangements were made for Detective Cloud to meet the Oxford police and participate in defendant's arrest and the initial interrogation. At approximately 5:15 P.M. on January 31st defendant was arrested for murder, given his *Miranda* warnings, and taken to a nearby Pennsylvania State Police headquarters. *Miranda* warnings were again given upon defendant's arrival, and he was fingerprinted and photographed. During the processing defendant stated that he had not killed the victim, but rather, he and Barbara Jordan had driven the victim to a small shopping center near Newark where they released her.

Around 8:00 P.M. that same evening representatives of the Maryland and Delaware State Police arrived at the Pennsylvania State Police headquarters. Defendant was again given his *Miranda* warnings, but he refused to sign a form acknowledging the fact that he had been warned of his rights and simultaneously stated that he did not want to say anything. The Maryland murder warrant was read to defendant, at which time he asserted "I didn't kill anyone." In response to his exculpatory statement, the police asked defendant why he had previously admitted to killing the victim in his statements to Newark and Delaware State Police. He was also informed that the autopsy of the victim revealed that she had been strangled, as defendant had stated in his prior confessions. Defendant again asserted that he had not killed anyone and the police for a second time re-

viewed the facts within their knowledge with defendant. Finally, defendant admitted killing the victim. The substance of his sixth confession was that he and Barbara Jordan had picked up the victim in a car, intending to discuss a dispute between the two girls. An argument ensued, and defendant strangled the victim with a belt from behind. The body was thrown off of a bridge into a creek somewhere in Maryland.

After his confession defendant was taken before a Pennsylvania Magistrate and arraigned on murder charges. The police determined that the crime had occurred in Delaware, and fugitive warrants were prepared. On February 1st Delaware State Police executed the warrants and took defendant into their custody. He was informed of his legal rights, and he stated that pursuant to advice of counsel he had nothing to say. Disregarding defendant's assertion of his right to remain silent, the police questioned the defendant who eventually broke down and confessed for a seventh time.

At defendant's trial the Superior Court ruled as inadmissible evidence the sixth and seventh confessions, as they were taken in violation of defendant's constitutional rights. However, the Court ruled that the statements were voluntarily made, and further that the police did not engage in a conscious attempt to thwart any constitutional rights of defendant. The State introduced in its case-in-chief the first five confessions made by defendant. When the defendant took the stand in his defense, the State introduced all of his statements, including the sixth and seventh, solely as evidence to impeach defendant's credibility.

## II

### A.

Defendant contends that his sixth and seventh statements were improperly admitted at his trial. The Superior Court ruled these statements admissible as impeaching evidence since from the totality of the circumstances the Court found the statements to be voluntary. Defendant claims the use of these statements for any purpose violated both his 14th Amendment Federal constitutional rights, and his rights under the Delaware Constitution Article I, § 7.

An argument identical to the one made here by defendant was rejected by the United States Supreme Court, as a matter of Federal constitutional law in *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In *Harris* the Court approved the use of statements, inadmissible in the prosecutions, case-in-chief, for impeaching the credibility of a defendant once the defendant has testified in his own behalf. The Court stated:

> "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements. 401 U.S. 222, 226, 91 S.Ct. 643, 646, 28 L.Ed.2d 1."

See also *Oregon v. Haas*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), *Williams v. State*, Del.Supr., 301 A.2d 88 (1973), *Hill v. State*, Del.Supr., 316 A.2d 557 (1974), and *Wright v. State*, Del.Supr., 374 A.2d 824 (1977). The Court in *Harris* added the caveat that the impeachment testimony was properly admitted ". . . provided of course that the trustworthiness of the evidence satisfies legal standards". 401 U.S. 222, 224, 91 S.Ct. 643, 645, 28 L.Ed.2d 1.

■ The Superior Court determined that the statements were voluntarily made, but did not make the additional determination of trustworthiness. See *Hill v. State*, Del. Supr., 316 A.2d 557 (1974). We find negligible evidence indicating that the statements were not trustworthy. Defendant had given five previous confessions containing the same basic facts of murder by strangulation, and disposition of the body by throwing it over a bridge on a back road. Defendant was not physically or psychologically coerced; he was of average intelligence, having received a high school degree; and he had had prior dealings with police.

Therefore, the Court correctly admitted the sixth and seventh confessions as statements impeaching defendant's credibility.

### B.

Defendant alleges that the statements which he made to Newark and Delaware State Police were a product of an improper detention, or of an illegal arrest. Therefore, defendant concludes that the statements were inadmissible evidence. Defendant bases his arguments on the statement of one of the investigating State Police officers that defendant was initially held pursuant to 11 *Del.C.* § 1902, and points to the fact that he was not asked the proper questions which legitimate a § 1902 detention, viz. what is his business abroad, etc. He contends that his subsequent arrest was illegal because it was not based upon probable cause. We find no merit in defendant's arguments.

■ Defendant's allegations concerning the impropriety of the § 1902 detention must fail as his confinement was a legitimate arrest. § 1902 was inapplicable because he voluntarily appeared and was not "stopped while travelling abroad", a requirement necessary to bring the law into play.

■ While the fact that § 1902 was inapplicable to defendant's case seemingly supports defendant's position that his detention was illegal, we find other facts of record which legitimated the police action. At the time of the purported two-hour detention, the police had information linking defendant to a missing person named Margaret Essick, coupled with defendant's repeated confessions to killing a person named Margaret. Thus, the police had sufficient cause to arrest defendant because they had reasonable grounds to believe defendant had committed a felony. 11 *Del.C.*

§ 1904(b).[2] The mislabeling of an arrest as a two-hour detention does not invalidate the otherwise lawful arrest. *State v. Bowden*, Del.Supr., 273 A.2d 481 (1971). It follows that defendant's statements were made during his appearance at the police station, which was entirely voluntary, and during the period of a legal arrest which followed. Therefore, they were properly admitted at his trial.

### III

■ Defendant's third assignment of error is that the State failed to establish that the crime occurred in Delaware, and thus, the Superior Court's jurisdiction was not properly invoked. Defendant's contention is without merit because the direct testimony elicited from one of the State's witnesses showed that the crime in fact took place in Delaware. Barbara Jordan stated that the killing occurred on Delaware Route 273 outside of the city limits of Newark, Delaware, and within the State boundaries. Thus, the State met its threshold burden of proving that the situs of the crime was in Delaware. Compare *James v. State*, Del.Supr., 377 A.2d 15 (1977).

### IV

Defendant contends that the results of the polygraph test given to him by Newark and State Police should have been admitted as exculpatory evidence at his trial. The results of the test showed that defendant was lying when he asserted that he killed a young woman. We find no error in the Superior Court ruling denying defendant the right to introduce the polygraph test results.

■ Polygraph examinations are generally held inadmissible for any purpose because their scientific reliability has not been established. See *Rawlings v. State*, 7 Md.

---

**2.** 11 *Del.C.* § 1904(b) reads as follows:

(b) An arrest by a peace officer without a warrant for a felony, whether committed within or without the State is lawful whenever:

(1) He has reasonable ground to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed; or

(2) A felony has been committed by the person to be arrested although before making the arrest the officer had no reasonable ground to believe the person committed it.

App. 611, 256 A.2d 704 (1969), *State v. Kavanaugh*, 52 N.J. 7, 243 A.2d 225 (1968), cert. den., 393 U.S. 924, 89 S.Ct. 254, 21 L.Ed.2d 259 (1968), and *Commonwealth v. Brooks*, 454 Pa. 75, 309 A.2d 732 (1973). But see also *United States v. Ridling*, E.D. Mich., 350 F.Supp. 90 (1972). We find no error in the ruling prohibiting the admission of the polygraph test results.

## V

Defendant challenges the instructions given to the jury in two respects. Initially, defendant contends that the Court erred by instructing the jury on the affirmative defense of duress, as he alleges he did not raise the defense in his testimony. However, defendant requested an instruction on the issue, and his complaint now seems to be with the manner in which the instruction was given. The Court instructed the jury in part as follows:

> "The defendant has asserted the affirmative defense of duress. The defendant has the burden of proving this affirmative defense to your satisfaction by a preponderance of the evidence. The State has no burden to present any evidence on this matter. . . . If you find that this affirmative defense of duress is established by the preponderance of the evidence, you should acquit the defendant."

Defendant alleges that the State raised the issue of duress in its case-in-chief, and that the defendant's defense was not duress, but that he did not commit the crime. There-fore, defendant concludes that it was confusing, and prejudicial error to charge the jury as the Court did.

■ We find the jury charge as given to be correct, as the record supports the finding that defendant raised the issue of duress, and the Court sufficiently covered the issue in its charge to the jury.

■ Defendant also contends it was error to place the burden of proving duress on the defendant. 11 *Del.C.* § 431[3] categorizes duress as an affirmative defense, and as such, it must be proved by the defendant by a preponderance of the evidence. 11 *Del.C.* § 304.[4] We have held a similar procedure of allocating the burden of proof concerning affirmative defenses to the defendant constitutional. *Goddard v. State*, Del.Supr., 382 A.2d 238 (1977).

We find no reversible error in the Superior Court instructions to the jury.

## VI

The State consented to the admission of the defendant to bail without a formal bail hearing, and thereafter, the Trial Court released defendant when he posted proper security. Defendant asserts that as a result of the State's action of agreeing to bail rather than initiating a bail hearing, the State impliedly dismissed the charge of murder in the first degree, and was estopped from thereafter proceeding with the first degree murder charge. Defendant re-

---

**3.** 11 *Del.C.* § 431(a) reads in full as follows:
§ 431. Duress as affirmative defense; defense unavailable in certain situations.
(a) In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the conduct charged to constitute the offense because he was coerced to do so by the use of, or a threat to use, force against his person or the person of another, which a reasonable person in his situation would have been unable to resist.

**4.** 11 *Del.C.* § 304 reads as follows:
§ 304. Defendant's affirmative defenses; prove by preponderance of evidence.
(a) When a defense declared by this Criminal Code or by another statute to be an affirmative defense is raised at trial, the de-fendant has the burden of establishing it by a preponderance of the evidence.
(b) Unless the court determines that no reasonable juror could find an affirmative defense established by a preponderance of the evidence presented by the defendant, the defendant is entitled to a jury instruction that the jury must acquit him if they find the affirmative defense established by a preponderance of the evidence.
(c) An affirmative defense is established by a preponderance of the evidence when the jury is persuaded that the evidence makes it more likely than not that each element of the affirmative defense existed at the required time.

lies upon 11 *Del.C.* § 2103 [5] which states that a person charged with a capital crime, that is a crime punishable by death, may not be admitted to bail unless the Superior Court so orders after a bail hearing. See also *Del.Const.* Art. I, § 12, and *In re Steigler*, Del.Supr., 250 A.2d 379 (1969). First degree murder was punishable by death and was a capital crime at the time of defendant's crimes. Defendant argues that by not following the mandate of § 2103, the State waived its right to try defendant for a capital offense, i. e., first degree murder. We disagree.

■ Defendant realized his right to bail without having to meet the rigorous requirements of § 2103. He was in no way prejudiced and, in fact, he gained his liberty because the State followed an improper bail procedure. We find no basis for estopping the State from proceeding on the first degree murder charge. *Quillen v. Betts*, 9 Terry 93, 98 A.2d 770 (1953).

### VII

■ Defendant makes two contentions of error which we shall address briefly. Defendant alleges that the process of selecting the jury pursuant to Superior Court Criminal Rule 24 is unconstitutional. Rule 24 requires that in capital cases the right of peremptory challenge shall be exercised upon examination of the individual juror, whereas, in non capital cases the jurors are not challenged until the entire jury is impaneled. We find no constitutional defect in this procedure as it rationally requires the defendant and the State to focus upon possible prejudices of the individual juror, as opposed to allowing evaluation of the composition of the jury as an entire body. In the context of a murder trial, such a procedure is legitimate. See *St. Clair v.*

*United States*, 154 U.S. 134, 14 S.Ct. 1002, 38 L.Ed. 936 (1894).

■ Defendant finally argues that there was no evidence of record to support his conviction on the charge of conspiracy. We disagree, as the conspiracy or common purpose may have been logically inferred from the facts of record.

\*    \*    \*    \*    \*    \*

No error appears in the proceedings in the Superior Court, and the conviction of defendant, Franklin C. Foraker, on charges of murder in the first degree and conspiracy in the first degree is

AFFIRMED.

---

**5.** 11 *Del.C.* § 2103 reads as follows:

§ 2103. Persons charged with a capital crime.

(a) A capital crime shall not be bailable, and a person so charged shall be held in custody without bail until the charge be withdrawn, reduced or dismissed or until the court shall otherwise order after a trial which results in less than a conviction of a capital crime or except as provided in subsection (b) of this section.

(b) The Superior Court may admit to bail a person charged with a capital crime if after full inquiry, the Superior Court shall determine that there is good ground to doubt the truth of the accusation, and the burden of demonstrating such doubt shall be on the accused.