IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

WAGIH HANNA and
BOTHINA HANNA

    Plaintiffs,

v.

                         C.A. No. S12J-03-058 RFS

DIETER A. BAIER,

    Defendant.

## ORDER

Submitted: 9/4/2019
Decided: 1/22/2020

Andres Gutierrez de Cos, Esq. 5211 W. Woodmill Dr., Suite 36, Wilmington, DE 19808, Attorney for Plaintiffs.

Daniel A. Griffith, Esq., Renaissance Centre, Suite 500, 405 North King Street, Wilmington, DE 19801, Attorney for Defendant.

## I.  INTRODUCTION

Before the Court is Defendant, Dieter A. Baier's ("Defendant") Motion to Transfer

Venue to the Court of Chancery. For the reasons that follow, Defendant's Motion is

**GRANTED.**

## II. FACTUAL AND PROCEDURAL HISTORY

On August 17, 2011, Wagih Hanna and Bothina Hanna (collectively, the "Plaintiffs")

obtained a judgment from the Massachusetts Superior Court of Worchester County against

Defendant in the amount of $521,610.31. On June 6, 2012, the Maryland Circuit Court for Talbot

1

County issued a charging order against Defendant, creating a lien against Defendant's interest in Cabinetry Unlimited, LLC ("Cabinetry Unlimited"). The charging order was then domesticated in the Delaware Superior Court. On April 28, 2014, the United States Bankruptcy Court for the District of Maryland issued a Discharge Order for the Defendant in his personal capacity. However, the Plaintiffs' charging order survived.

Cabinetry Unlimited has not paid any money to Plaintiffs. Cabinetry Unlimited has, however, made payments to Defendant. Defendant is the managing member of Cabinetry Unlimited. Plaintiffs seek enforcement of the charging order, arguing that the distributions made from the LLC to Defendant are in violation of the charging order.

Plaintiffs have filed a Motion for Rule to Show Cause against Defendant, as the controlling shareholder of Cabinetry Unlimited and the debtor, for Defendant's alleged refusal to comply with the charging order. Plaintiffs request that the Court enter a judgment against Cabinetry Unlimited to the extent of its violation of the charging order. Plaintiffs ask this Court to sanction Cabinetry Unlimited for making distributions to Defendant. Defendant moved for an order transferring this matter from the Superior Court to the Court of Chancery arguing that Plaintiffs want this Court to determine the business decisions made by a limited liability company, which are matters better handled by the Court of Chancery.

On June 25, 2019, the Court heard oral argument on whether Plaintiffs' allegations regarding the unauthorized distributions were so encompassed within the scope of the Limited Liability Company Act ("LLC Act") that venue would be more proper with the Court of Chancery. The Court then requested more specific information with respect to the nature of Plaintiffs' allegations to determine whether to transfer venue. Defendant maintains that Plaintiffs' allegations concern the transactions between an LLC and its managing member.

2

Plaintiffs have requested this Court to retain jurisdiction because each claim made for recovery in violation of the charging order is within this Court's jurisdiction.

## III. <u>DISCUSSION</u>

Plaintiffs argue that this Court regularly enforces monetary judgments through equitable means. The charging order provides a lien on the economic value that flows from the membership interest in the LLC. Plaintiffs ask this Court to determine that flow of economic value exists and should be garnished. Defendant argues that Plaintiffs are challenging the business transactions of Cabinetry Unlimited and its managing member, the Defendant, warranting transfer. Defendant claims that each challenge made by the Plaintiffs falls under the LLC Act and the Court of Chancery is the necessary and appropriate forum.[1]

A charging order constitutes a lien on the judgment debtor's limited liability company interest.[2] "The charging order remedy has been held to be analogous to a garnishment,....a remedy traditionally available from the Superior Court."[3] This Court has the authority to enforce charging orders.[4] However, the Court of Chancery is the default forum for resolving LLC disputes.[5]

A case can be transferred to the Court of Chancery if this Court lacks jurisdiction. "The Court of Chancery is a court of limited jurisdiction and only may acquire jurisdiction if: "(1) one or more of the plaintiff's claims ... is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute."[6] A careful review

---

[1] 6 *Del. C.* § 18-111.
[2] 6 Del. C. § 18-703.
[3] *MacDonald v. MacDonald*, 1986 WL 5480, at *4 (Del. Ch. May 9, 1986).
[4] *Hanna v. Baier*, 2018 WL 3049234, at *2 (Del. Super. Ct. June 19, 2018).
[5] *Poppiti v. Conaty*, 2012 WL 361727, at *1 (Del. Ch. Feb. 1, 2012).
[6] *Sun Life Assurance Co. of Canada - U.S. Operations Holdings, Inc. v. Grp. One Thousand One, LLC*, 206 A.3d 261, 265 (Del. Super. Ct. 2019).

of the pleadings reveals Plaintiffs are seeking relief this Court cannot provide. Pursuant to 10 *Del. C.* § 1902 this Court may transfer the proceeding to an appropriate court.[7]

The distributions Plaintiffs challenge include the following: (1) Cabinetry Unlimited's payment of car loans for vehicles owned by the Defendant, (2) Cabinetry Unlimited's payment of attorney fees and life insurance for Defendant, (3) "The Park Street Transaction",[8] (4) Cabinetry Unlimited's payment to partners,[9] (5) Cabinetry Unlimited's conventional distributions made directly to Defendant, and (6) Cabinetry Unlimited's unreported income entrusted to Defendant. Plaintiff asks this Court to determine whether or not there exists a flow of economic value from Cabinetry Unlimited to the Defendant that should be garnished.

Defendant claims these transactions are not subject to the charging order. Defendant asserts that the payment of the car loans were for company vehicles and Defendant received no benefit for them. He also argues that the attorney fees are for Cabinetry Unlimited paying to defend itself because it was named as a defendant in Plaintiffs' Show Cause Motion. In addition, Defendant argues that the LLC Act includes a provision authorizing payment of attorneys' fees for claims made against the company and its manager. Defendant also claims that the life insurance was a requirement entered into by Cabinetry Unlimited and not a distribution. In regard to "The Park Street Transaction", Defendant argues that Plaintiffs misunderstand the transaction and it would not be considered a distribution. Defendant also argues that the tax and vendor payments were made by Cabinetry Unlimited in the ordinary course of business.

---

[7] Section 1902 provides, in pertinent part:
> No civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter, either in the original proceeding or on appeal. Such proceeding may be transferred to an appropriate court for hearing and determination....

[8] Plaintiff contends that "The Park Street Transaction" is a transaction where Cabinetry Unlimited invested in a shell corporation owned by Defendant.

[9] Cabinetry Unlimited made payments to Defendant as guaranteed payments to partner.

4

The question concerning whether these transactions fall within distributions constituting economic flow subject to the charging order is a question which should be determined in the Court of Chancery because the transactions are within the LLC Act.

Limitations on distributions made between a company and its members are directly addressed in the LLC Act.[10] In part, § 18-607 of the LLC Act provides:

> A limited liability company shall not make a distribution to a member to the extent that at the time of the distribution, after giving effect to the distribution, all liabilities of the limited liability company, other than liabilities to members on account of their limited liability company interests and liabilities for which the recourse of creditors is limited to specified property of the limited liability company, exceed the fair value of the assets of the limited liability company, except that the fair value of property that is subject to a liability for which the recourse of creditors is limited shall be included in the assets of the limited liability company only to the extent that the fair value of that property exceeds that liability. For purposes of this subsection, the term "distribution" shall not include amounts constituting reasonable compensation for present or past services or reasonable payments made in the ordinary course of business pursuant to a bona fide retirement plan or other benefits program.[11]

In addition to § 18-607, Defendant identifies other sections of the LLC Act, arguing that the LLC Act includes provisions that directly apply to each of the transactions. Defendant argues that the transactions between Cabinetry Unlimited and Defendant are encompassed within 6 *Del. C.* § 18-111. Section 18-111 addresses the interpretation and enforcement of a limited liability company agreement. It provides:

> Any action to interpret, apply or enforce the provisions of a limited liability company agreement, or the duties, obligations or liabilities of a limited liability company to the members or managers of the limited liability company, or the duties, obligations or liabilities among members or managers and of members or managers to the limited liability company, or the rights or powers of, or restrictions on, the limited liability company, members or managers, or any provision of this chapter, or any other instrument, document, agreement or certificate contemplated by any provision of this chapter, may be brought in the Court of Chancery.[12]

---

[10] 6 Del. C. § 18-607.
[11] *Id.*
[12] 6 *Del. C.* § 18-111.

The disputes in which the Court of Chancery has jurisdiction, are "disputes involving: (1) the provisions of an LLC agreement; (2) an LLC's duties and obligations to its members and managers; (3) the duties and obligations between and among the members, managers, and the LLC; (4) the rights, powers, or restrictions of the LLC or its members or managers; and (5) any provision of the LLC Act or any other instrument, document, agreement or certificate contemplated by any provision of the LLC Act."[13]

The challenged transactions are encompassed in the LLC Act; however, this Court must determine whether transfer is warranted. It has been established that the Superior Court has jurisdiction to issue and enforce charging orders. In *MacDonald v. MacDonald*, the Court of Chancery determined that the Superior Court was the appropriate forum where a plaintiff was seeking an order charging the defendant's interest in a limited partnership ("LP").[14] The court reasoned that the Superior Court was the appropriate forum to reduce a foreign judgment to a Delaware judgment.[15] The court also concluded that the case presented no circumstances that would take jurisdiction from the Superior Court.[16] Here, the judgment has been reduced to a domestic judgment. The Court is now faced with determining the validity of transfers made from an LLC to its managing member.

Plaintiffs also rely on *Patterson-Woods Associates, LLC v. Realty Enterprises, LLC*, contending that enforcement of the charging order does not involve claims for equitable recovery and, thus, transfer would be inappropriate.[17] The holding in *Patterson-Woods* provided that the Superior Court had jurisdiction over charging orders and could rule on a discovery motion in aid

---

[13] *Sun Life Assurance Co. of Canada - U.S. Operations Holdings, Inc. v. Grp. One Thousand One, LLC*, 206 A.3d 261, 266 (Del. Super. Ct. 2019).
[14] 1986 WL 5480, at *4 (Del. Ch. May 9, 1986).
[15] *Id.*
[16] *Id.*
[17] 2018 WL 3379887 (Del. Ch. Jul. 10, 2018).

6

of execution of the order.[18] These cases provide that this Court has the ability to enforce a charging order; however, they provide little guidance on whether the Superior Court is the appropriate forum when enforcement of a charging order requires the Court to validate each conveyance between an LLC and its members.

Plaintiffs contend that they are not asking the Court to hold that the payments are improper under Delaware Limited Liability Company Law; rather, they are asking the Court to hold that they constitute a flow of economic value subject to garnishment. However, "the subject matter of a complaint is to be determined by an examination of the allegation in the complaint viewed in light of what the Plaintiff actually seeks and not necessarily what is pleaded."[19] "[T]he Court must review the allegations of the complaint as a whole to determine the true nature of the claim."[20] When reviewing the submissions and Plaintiffs' challenges as a whole, this case is not simply concerning the enforcement of an order.

The Plaintiffs allege that Cabinetry Unlimited, the garnishee, has not paid any money to Plaintiffs but has made payments to Defendant. Plaintiffs claim Cabinetry Unlimited, through its managing member – the Defendant, has made distributions which constitute an economic flow subject to garnishment. A careful review of the Plaintiffs' pleadings provide that the Plaintiffs allege that the LLC has made multiple distributions under the guise of ordinary business transactions. Such an allegation requires more than mere enforcement of the charging order against Defendant's interest. Plaintiffs are asking this Court to determine that a garnishee has fraudulently made distributions to a judgment debtor. Unfortunately, there is no law directly

---

[18] *Id.*

[19] *New Castle Cty. Vocational Tech. Educ. Ass'n v. Bd. of Educ. of New Castle Cty. Vocational Tech. Sch. Dist.*, 451 A.2d 1156, 1164 (Del. Ch. 1982).

[20] *Duff v. Innovative Discovery LLC*, 2012 WL 6096586, at *4 (Del. Ch. Dec. 7, 2012) (citing *Christiana Town Ctr., LLC v. New Castle Cty.*, 2003 WL 21314499, at *3 (Del.Ch. June 6, 2003)).

addressing the jurisdictional issue currently before this Court. However, case law provides some guidance.

In *John Julian Construction Co. v. Monarch Builders, Inc.*, the plaintiff argued that assets of a corporation should have been transferred to creditors rather than the garnishees who were shareholders of the corporation.[21] The plaintiff also argued that the transfer of property from the corporation to the garnishees was a violation of the Fraudulent Conveyance Act and the garnishees were liable.[22] The garnishees in that action argued that the Superior Court was without jurisdiction to set aside such a conveyance and the Delaware Supreme Court agreed.[23]

Even if this Court has the authority to set aside the transfers made by Cabinetry Unlimited, it must be decided if this Court is the correct forum to decide whether the challenged transactions are transactions authorized by the LLC Act. *Albert v. Management Services, Inc.*, a case involving a limited partnership ("LP"), provides some guidance on this issue. The court in *Albert* discussed whether contract claims, dealing with the management of funds of an LP, were more appropriate in the Court of Chancery.[24] The duty to manage funds arose under the LP agreement, which the court determined arose under § 17-111. Section 17-111 required the court to interpret, apply or enforce the provisions of the partnership agreement.[25] The court concluded that "Delaware courts have consistently interpreted § 17-111 as maintaining the former rule that Chancery has sole jurisdiction over internal partnership affairs, except after some event has occurred, such as an accounting or drafting a separate instrument, that obviates equity's superior ability to resolve all outstanding matters between the parties."[26] The court further stated that

---

[21] 324 A.2d 208, 211 (Del. 1974).
[22] *Id.* at 211.
[23] *Id.* at 208 (the Court stating: "the superior court was without jurisdiction to set aside an alleged fraudulent conveyance from the judgment debtor to the garnishees.")
[24] *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2004 WL 2050527, at *4 (Del. Super. Ct. Sept. 15, 2004).
[25] *Id.*
[26] *Id.* at *5.

these disputes being heard by the Court of Chancery "enhances Delaware's attractiveness as a home for partnerships by providing managers of those entities with a secure, highly expert forum to resolve disputes involving how they do their jobs."[27]

Similar to the case involving the LP dispute arising in *Albert*, this Court must decide if the Court of Chancery would be the appropriate forum to handle disputes arising from the transactions between Cabinetry Unlimited and the Defendant. The transactions that Plaintiffs challenge are encompassed within § 18-111.[28] Like § 17-111 discussed in *Albert*, § 18-111 addresses interpretation and enforcement of LLC agreements.

Furthermore, Plaintiffs request that this Court enter a judgment against Cabinetry Unlimited for violating the charging order.[29] Plaintiffs ask this Court to instruct both Cabinetry Unlimited and Defendant to show cause as to why they should not be held in contempt and liable for the alleged distributions. Plaintiffs bring this action against Defendant because of alleged distributions made by Cabinetry Unlimited, through his capacity as managing member of the LLC.[30] Plaintiffs are attempting to hold Defendant liable for the actions of Cabinetry Unlimited, seeking to pierce the corporate veil.

Although Defendant is the managing member of the LLC, to hold the Defendant liable for payments made by Cabinetry Unlimited would require this Court to pierce the corporate veil and directly hold the entity's member liable.[31] Piercing the corporate veil, however, is an

---

[27] *Id.*

[28] Like § 17-111, § 18-111 addresses interpretation and enforcement of LLC agreements.

[29] Pl.'s Mot. (Plaintiffs request "this Court issue the attached Rule to Show Cause against Cabinetry Unlimited LLC, requiring this company to appear and show cause as to why it should not be held in contempt of Court, and liable for distributions paid to judgment debtor Mr. Dieter A. Baier in violation of the charging order....").

[30] Plaintiffs have not named Cabinetry Unlimited as a defendant in this case. However, they request this Court to sanction the LLC for making alleged distributions to Defendant.

[31] *Yu v. GSM Nation*, LLC, 2018 WL 2272708, at *6 (Del. Super. Ct. Apr. 24, 2018) (Piercing the corporate veil "permits courts to ignore corporate boundaries where fraud or inequity in the use of the corporate form is found. This practice is termed 'piercing the corporate veil' because the Delaware Court of Chancery has sole subject matter jurisdiction over actions to "pierce the corporate veil.")

9

argument that may be considered only in the Court of Chancery.[32] The Superior Court lacks jurisdiction to pierce the corporate veil and hold Defendant liable for the actions of Cabinetry Unlimited.[33] Should it be determined that Defendant disregarded the separateness of the entity structure and held liable, this Court would be unable to grant that relief for Plaintiffs.[34]

Plaintiffs also allege that Cabinetry Unlimited should be liable for the constructive distributions made pursuant to the "Park Street Transaction." Plaintiffs claim that Park Street Investments, owned wholly by Defendant, is a shell corporation that Cabinetry Unlimited invested in for the sole benefit of Defendant. Plaintiffs claim that Cabinetry Unlimited caused a net transfer of over $1,000,000 for Defendant's benefit. The alleged distribution was made between two entities, Cabinetry Unlimited and Park Street Investments. However, Plaintiffs allege that Defendant used his membership in Cabinetry Unlimited to invest in Park Street Investments. To hold Defendant liable for Cabinetry Unlimited's investment would require this Court to pierce the corporate veil of Cabinetry Unlimited. As discussed, this is relief that the Superior Court cannot provide and solely within the Court of Chancery's jurisdiction.[35]

The Court of Chancery has jurisdiction to hear and determine any matter relating to the charging order.[36] Where disputes between parties involve the business decisions of an LLC encompassed within the LLC Act, the Court of Chancery is the appropriate forum.[37] Without undue repetition, this Court cannot pierce the corporate veil to compensate Plaintiffs for arguably inappropriate transactions. Therefore, this case must be transferred to the Court of Chancery.

---

[32] *Thomas v. Hobbs*, 2005 WL 1653947, at *2 (Del. Super. Ct. Apr. 27, 2005) ("this Court has no jurisdiction to pierce the corporate veil of a limited liability company, just as it would not with a corporation.").
[33] *T & H Bail Bonds, Inc. v. Preferred Inv. Servs., Inc.*, 2015 WL 5121124, at *6 (Del. Super. Ct. Aug. 31, 2015).
[34] *Id.* at 5.
[35] *Id.*
[36] 6 *Del. C.* § 18-703.
[37] *See Poppiti* at *1.

# IV. CONCLUSION

Considering the foregoing, Defendant's Motion is **GRANTED** under 10 *Del.C.* § 1902.

**IT IS SO ORDERED.**

_____
Richard F. Stokes, Judge

FILED PROTHONOTARY
SUSSEX COUNTY
2020 JAN 22 A 10: 56

11