STATE of Delaware

v.

**Aubrey McKAY, a/k/a Joseph N. McAdams.**

Superior Court of Delaware, New Castle.

Submitted Dec. 27, 1977.

Decided Jan. 9, 1978.

Edward C. Pankowski, Deputy Atty. Gen., Dept. of Justice, Wilmington, for the State.

John C. Phillips, Jr., Wilmington, for defendant.

WALSH, Judge.

The defendant, who has been charged in a 35 count indictment with various offenses including Rape First Degree, Kidnapping First Degree and Robbery First Degree, has filed two motions directed to the proceedings against him.[1] The first motion seeks a dismissal of the indictment on the ground that inflammatory, adverse publicity surrounding the commission of the offenses and defendant's apprehension render it impossible for defendant to receive a fair trial.

---

1. The defendant is represented by court-appointed counsel who filed and briefed these motions. Since the motions were filed, defendant has requested that other counsel be appointed for him. This request was denied and Mr. Phillips has been asked to remain as counsel for the defendant and to provide such assistance as defendant will permit. The pursuit of these motions by defendant's counsel are deemed in the defendant's interest although the Court recognizes that defendant may not have specifically authorized their filing or the arguments in support of them.

Secondly, defendant seeks a severance of the charges in the indictment to permit separate trials on the eight incidents which give rise to the indictment. These motions will be separately considered.

## MOTION TO DISMISS

The thrust of defendant's motion to dismiss is that the unusual events which surround the offenses and the public agitation which preceded his indictment preclude the prospect that an unbiased and impartial jury can be selected from New Castle County to participate in his trial. Moreover, defendant contends, the size of the State and the extensive circulation of the Wilmington daily newspapers render a change of venue to another county not a suitable alternative. The State concedes that there was widespread publicity concerning the offenses charged and defendant's background but argues that traditional safeguards which underlie proper jury selection should insulate against juror prejudice.

▆▆▆ The exhibits submitted by defendant in support of his motion establish that the incidents which gave rise to the indictment were the subject of intense newspaper publicity in the Wilmington area. It is equally clear that immediately prior to and subsequent to his apprehension, the defendant's history of incarceration and his criminal record was also the subject of newspaper comment. The Court will assume that this case presents a situation of unusual pretrial publicity, adverse to the defendant's interests. The test, however, is whether that publicity is so "inherently prejudicial" as to preclude voir dire determination of actual juror prejudice and require dismissal or change of venue. *United States v. Mandel*, D.Md., 415 F.Supp. 1033 (1976). I conclude that the publicity engendered in this case does not rise to the level of inherent prejudice. Understandably, the offenses under indictment were the subject of community concern and media interest. But it cannot be presumed that an entire jury panel, drawn county-wide, would not contain sufficient jurors of impartial disposition even in the face of wide publicity.

As was stated in *United States v. Kahaner*, S.D.N.Y., 204 F.Supp. 921, 924 (1962); aff'd on other grounds, 317 F.2d 459 (2d Cir. 1963):

". . . The courts do not function in a vacuum and jurors are not required to be totally ignorant of what goes on about them. We live in a world of reality. Serious accusations against public officers and public figures are bound to receive wide publicity through all avenues of modern communication; the public interest will be more than casual and it would be rare to find persons qualified to serve as jurors who have not heard or read of such matters. These are facts that cannot be downed. On the other hand, it is also a fact that frequently in this large metropolitan district prospective jurors show little recall of past widely publicized matters; fears that jurors have formed opinions often prove groundless; the impact of news items upon the public mind, depending upon their nature, may be more imaginary than real. Further, impressions or even an opinion do not necessarily establish partiality or prejudice."

▆▆ The purpose of voir dire is to examine prospective jurors in specific areas of bias, interest and prejudice to insure, to the extent humanly feasible, that the defendant will be tried before a group of his fellow citizens able to decide his guilt or innocence solely on the evidence presented under appropriate legal instructions. A voir dire calculated to achieve that end sufficiently protects the defendant's right to a fair trial. *United States v. Wooten*, 3rd Cir., 518 F.2d 943 (1975), cert. den., 432 U.S. 895, 96 S.Ct. 196, 46 L.Ed.2d 128 (1975).

Since I conclude that a determination of actual prejudice must await a voir dire of prospective jurors, the defendant's motion to dismiss must be denied. IT IS SO ORDERED.

## MOTION TO SEVER

The 35 count indictment pending against the defendant covers the following offenses:

Burglary Second Degree—4 Counts

Possession of a Deadly Weapon During the Commission of a Felony—11 Counts

Robbery First Degree—8 Counts

Kidnapping First Degree—4 Counts

Rape First Degree—4 Counts

Kidnapping Second Degree—1 Count

Attempted Robbery First Degree—1 Count

Escape After Conviction—1 Count

Possession of a Deadly Weapon By a Person Prohibited—1 Count

■ All offenses occurred in the City of Wilmington between May 17 and June 30, 1977. Eight separate incidents were involved, with nine different victims—one robbery was directed against two individuals. All the victims were white females—four of whom were allegedly raped, robbed and kidnapped. The defendant is black and was allegedly on furlough status from the Delaware Correctional Center at the time of commission of each offense. He is also charged with eventually escaping from that status on July 4, 1977.

The defendant contends that the sheer mass of charges will render it extremely difficult for a jury to differentiate between the various offenses. As a result, the jury may simply assume a general criminal disposition on defendant's part as a substitute for finding individualized guilt, particularly if defendant is shown to be an escaped prisoner. The State argues, however, that the pattern of victim selection and the method of operation which emerges from an evidential showing on all crimes, establishes the "common scheme or plan" requirement for a proper joinder of offenses under Superior Court Criminal Rule 8(a).

While Rule 8(a) does contain initial authority for the State to include multiple charges in a single indictment, it is not conclusive on the question of whether those charges may be severed for trial purposes since Rule 14 specifically contemplates a post-indictment severance of offenses if either the defendant or the State "is prejudiced." In *Drew v. United States*, 118 U.S. App.D.C. 11, 331 F.2d 85 (1964), three situations of prejudice encompassed in the Federal counterpart of Rule 14 were found to exist where: (1) the defendant was subject to embarrassment or confusion in attempting to present different defenses to different charges; (2) the jury may improperly infer a general criminal disposition on the part of the defendant from the multiplicity of charges and (3) the jury may accumulate evidence presented on all offenses charged in order to justify a finding of guilt of particular offenses.

As the State notes, where the offenses charged are of the same general nature and give evidence of a *modus operandi*, severance has been denied even in the face of obvious prejudice to the defendant. *Brown v. State*, Del.Supr., 310 A.2d 870 (1973) (three drug sales in an eight day period); *Arnold v. United States*, D.C.App., 358 A.2d 335 (1976) (two rapes under identical circumstances in two week period); *McKnight v. State*, Md.App., 364 A.2d 116 (1976) (four robberies involving same mode of attack within one month). In this case, similarities abound in the selection of victims, times, locations, method of force and selection of weapon. But the Court is not aware of any decision denying a severance for trial purposes in a situation involving as many incidents and serious charges. The sheer mass of the charges in this case renders it extremely unlikely that a jury will be able to resist the cumulative effect of evidence linking the defendant to separate charges. The jury is required to analyze the evidence, separately, under appropriate instructions, to determine whether the State has proved the defendant's guilt beyond a reasonable doubt. Given the effect of the admitted adverse publicity which this case has engendered, as previously noted, the jury's task will be difficult enough. To ask the jury also to make compartmentalized judgments of guilt or innocence concerning eight separate incidents of an inflammatory nature, is to expect an unusual degree of detachment.

Adding to the problem of accumulation is the presence of two charges in the indictment which create issues of particular prejudice—Count 34, Escape After Conviction

and Count 35, Possession of a Deadly Weapon By a Person Prohibited. Evidence presented to support these charges necessarily conveys to the jury, the defendant's prior criminal record and status as a prisoner. Neither of these charges has a direct relationship to the other offenses and can be proved without a reference to the remaining offenses.

Finally, the Court is cognizant of the weight and diversity of the evidence which the State claims links the defendant to each incident, including fingerprints, eyewitness identification and a lengthy confession. In view of the claimed mass of evidence, the need for the State to show a *modus operandi* through proof of multiple offenses is not compelling. In any event, such need does not outweigh the specific prejudice which will ensue from the cumulative effect of such evidence.

In ruling upon defendant's motion, the Court is not unmindful of the judicial economy to be achieved through a single trial. But, again, on balance, such a consideration does not offset the prejudicial effect of joinder.

Since I conclude that the defendant is entitled to relief from prejudicial joinder, the extent of severance must next be considered. As noted, there are eight separate incidents covered by the indictment and each of these incidents involves multiple offenses. The State may elect, upon notice to the defendant, the sequence of the separate trials of these incidents. The charges in Counts 34 and 35 may also be consolidated in a single trial since each involves disclosure of defendant's prior criminal record. The State's election of incidents to be first tried should be made within five days of the date of this opinion.

IT IS SO ORDERED.