# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
                                  )
      v.                  )
                                  )      ID Nos. 2106004632; 2106004704
KEITH GIBSON,         )           2107000202; 2107000514
                                  )
      Defendant.       )

Submitted: July 15, 2022
Decided: November 2, 2022

## ORDER

*Upon Defendant Keith Gibson's Motion to Sever Charges.*
**GRANTED.**

*Upon Defendant Keith Gibson's Motion for Disclosure of Non-Recorded Portions of Witness Statements.*
**DEFERRED.**

*Upon Defendant Keith Gibson's Motion to Suppress Defendant's Statement.*
**GRANTED.**

*Upon Defendant Keith Gibson's Motion to Suppress Evidence Seized from Defendant's iPhone.*
**DEFERRED.**

*Upon Defendant Keith Gibson's Motion for Identification of 404(b) Evidence.*
**DEFERRED.**

*Upon Defendant Keith Gibson's Motion to Exclude Admission of Photo Lineup.*
**DENIED.**

Matthew B. Frawley, Esquire and John W. Downs, Esquire, Deputy Attorneys General, DEPARTMENT OF JUSTICE, 820 North French Street, Wilmington, Delaware 19801, Attorneys for the State.

Eugene J. Maurer, Esquire, and Elise K. Wolpert, Esquire, EUGENE J. MAURER, JR., P.A., 1201-A King Street, Wilmington, Delaware 19801, Attorneys for Defendant Keith Gibson.

**WHARTON, J.**

This 2nd day of November, 2022, upon consideration of Defendant Keith Gibson's ("Gibson") six motions: (1) Motion to Sever Charges;[1] (2) Motion for Disclosure of Non-Recorded Portions of Witness Statements;[2] (3) Motion to Suppress Defendant's Statement;[3] (4) Motion to Suppress Evidence Seized from Defendant's iPhone;[4] (5) Motion to Identify 404(b) Evidence;[5] and (6) Motion to Exclude Admission of Photo Lineup;[6] and the State's responses, it appears to the Court that:

1. On July 6, 2021, Gibson was indicted in a forty-one-count indictment.[7] His charges include Murder First Degree (four counts);[8] Attempted Murder First Degree (one count) and multiple counts of Robbery First Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), and Possession of a Firearm by a Person Prohibited ("PFBPP"). The charges stem from five separate criminal investigations that took place between May 15, 2021 and June 8, 2021. All of Gibson's purported crimes in this case took place in either the City of Wilmington or the contiguous Town of Elsmere, Delaware.

---

[1] D.I. 45. (Docket Items numbers are from ID No. 21060045632.)
[2] D.I. 42
[3] D.I. 40.
[4] D.I. 41.
[5] D.I. 39.
[6] D.I. 44.
[7] Indictment, D.I. 1.
[8] The four First Degree Murder counts are comprised of one intentional murder charge and one felony murder charge for each of the two homicide victims.

2.     The State alleges that on May 15, 2021, Gibson shot and killed Metro PCS employee Leslie Basilio ("Basilio") while robbing the store where she worked in Elsmere.[9]  Gibson is also accused of stealing her car.[10]  On June 5, 2021, Gibson is alleged to have shot and killed Ronald Wright ("Wright"),[11] supposedly also stealing his sling bag.[12]  The next day, June 6, 2021, Gibson is accused of shooting and attempting to kill Belal Almansoori ("Almansoori") while robbing the Good Deli where Almansoori worked.[13]  During the early morning hours of June 8, 2021, Gibson is accused of stealing Secret Harris' ("Harris") phone, hitting her with a gun, and shooting at her fleeing car.[14]  Later that morning, Gibson (along with an alleged co-conspirator, Alexander Delgado) is accused of robbing a Rite Aid and threatening an employee, Sandra Collins.[15]

3.     **Motion to Sever Charges**.[16]  Gibson asks the Court to sever the 41 counts of his indictment into three separate trial groupings.[17]  He further asks the Court to sever the PFBPP charges within those groupings from the underlying

---

[9] State's Resp. to Def.'s Motion to Sever at ¶ 2, D.I. 55.
[10] *Id.*
[11] *Id.,* at ¶ 3.
[12] *Id.*
[13] *Id.,* at ¶ 4.
[14] *Id.,* at ¶ 5.
[15] *Id.,* at ¶ 6.
[16] D. I. 45.
[17] *Id.,* at ¶ 13.

offenses and try them separately.[18] He proposes the charges be grouped for trial as follows: (1) "business robberies" (counts 1–8 (Basilio), 18–22 (Almansoori), and 30–41 (Collins)), further severing the PFBPP counts (counts 8, 22, 33, 39, 40 and 41) and trying them as part of a bifurcated trial with the "business robbery" counts; (2) "drug dealer robbery" (counts 9–17 (Wright)), further severing and bifurcating for trial count 17 (PFBPP)); and (3) the "confrontation on the street" (counts 23–29 (Harris)), further severing and bifurcating for trial count 29 (PFBPP).[19] The State opposes, but asks for simultaneous bench or bifurcated jury trials on the PFBPP charges if severance is granted.[20]

4.     Gibson argues that he would suffer prejudice if severance is not granted.[21] He claims, for example, that the facts underlying the robbery-homicides (and attempted homicide) "are not all sufficiently connected and do not follow a common plan or scheme"[22] and that each offense-category can be proven without mention of the others.[23] He also voices concern about how the jury would decide his case - that it would aggregate evidence and infer a general criminal disposition, ultimately finding him guilty on that basis.[24] Gibson also relies on *State v McKay* to

---

[18] *Id.*
[19] *Id.*
[20] State's Resp. to Def.'s Motion to Sever at ¶ 30, D.I. 55.
[21] Def.'s Motion to Sever Charges *passim,* D.I. 45.
[22] *Id.* at ¶ 5.
[23] *See Id.,* at ¶¶ 7,11.
[24] *Id.* at ¶ 4.

4

argue that "the sheer mass of the charges" and the "adverse publicity which this case has engendered" would taint the jury.[25] Gibson argues that a joint trial would deny him his right to a fair trial guaranteed by the State[26] and Federal Constitutions.[27] Finally, he asserts that "[t]he interests of judicial economy do not outweigh [the above-described] prejudice."[28]

5.      In support of severing the PFBPP charges and bifurcating the trials, Gibson points to this Court's history of granting these requests.[29] He argues that bifurcation is needed because the jury may be unable to consider each count separately and improperly infer a criminal disposition.[30]

6.      The State responds that jury instructions would remedy any prejudice[31] and that joinder is "appropriate."[32] The State's overarching argument in support of joinder is that "the defendant's offenses are of a similar character, similar *modus operandi,* demonstrate a common scheme, and the evidence in some of the crimes is inextricably intertwined with the evidence in others."[33] The State points to

---

[25] *Id.,* at ¶ 10 (citing *State v. McKay*, 382 A.2d 260, 262 (Del. Super. 1978).

[26] *Id.,* at ¶ 12 (citing Del. Const. art. I § 6; 7)

[27] *Id.* (.citing U.S. Const. amend. VI; XIV).

[28] *Id.*

[29] *Id.,* at ¶ 13 (citing *e.g.*, *State v. Williams*, 2007 WL 2473428, at * 1 (Del. Super. 2007); *State v. Wilson*, 1978 WL 185316, *2–3 (Del. Super. 1978)).

[30] *Id.*

[31] State's Resp. to Def.'s Motion to Sever Charges at ¶ 15, D.I. 55.

[32] *Id.,* at ¶ 13.

[33] *Id.*

similarities in ballistics,[34] "[the] distinct *modus operandi* for shooting during robberies,"[35] video footage of Gibson wearing similar clothes across investigations,36 including wearing Wright's bag throughout the incidents.[37] It also emphasizes that all crimes occurred within 24 days and that the majority of the crimes occurred in "rapid-fire succession" and "within blocks of one another in the same area of Wilmington."[38] The State argues the evidence in the Wright murder, the Harris robbery, and the other shootings is so inextricably intertwined that the incidents "must be tried by one jury."[39]

7.    The State distinguishes Gibson's case from *McKay*, arguing that while there was a "'mass of evidence' against McKay that minimized the need to prove his identity via *modus operendi* evidence[,]" the same is not true here.[40] Instead, "[e]vidence of *modus operendi* and other circumstantial evidence linking the various crimes is important to prove Gibson's identity beyond a reasonable doubt."[41]

---

[34] *Id., passim.*
[35] *Id.,* at ¶ 21.
[36] *Id., passim.*
[37] *Id,* at ¶ 23.
[38] *Id.,* at ¶ 13.
[39] *Id.,* at ¶ 27.
[40] *Id.,* at ¶ 26 (citing *McKay*, 382 A.2d at 263).
[41] *Id.*

6

8.      Finally, the State argues that the PFBPP charges do not automatically trigger bifurcation.[42]   Specifically, juries can compartmentalize charges and the Court can mitigate the risk of prejudice by instructing the jury that Gibson has a conviction that meets the criteria to trigger a PFBPP charge without specifying the charge for which he was convicted.[43]

9.      Under Delaware law, a criminal defendant may be tried simultaneously for two or more offenses.[44]   Offenses will only be tried together if they are "of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."[45]   The Court, however, has discretion to sever if the defendant shows "a reasonable probability that substantial prejudice may result from a joint trial."[46] The Defendant must show that the alleged prejudice manifestly outweighs the "dominant concern" of judicial economy and efficiency.[47]   A showing of hypothetical prejudice is not enough.[48]

---

[42] State's Resp. to Def.'s Motion to Sever Charges, at ¶ 29 (citing *State v. Murphy*, 2000 WL 303349 (Del. Super. 2000)), D.I. 55.
[43] *Id.* at ¶ 29–30.
[44] Super. Ct. Crim. R. 8(a).
[45] *Id.*
[46] *Skinner v. State*, 575 A.2d 1108, 1118 (Del. 1990) (citing *Bates v. State*, 386 A.2d 1139, 1141 (Del. 1978)); *see* Super. Ct. Crim. R. 14.
[47] *State v. Howard*, 1996 WL 190045 at *4 (Del. Super. 1996) (citing *Drew v. United States*, 331 F.2d 85 (D.C. Cir. 1964); *United States v. Kenny*, 645 F.2d 1232 (9th Cir. 1981)).
[48] *Skinner*, 575 A.2d at 1118 (citing *Bates*, 386 A.2d at 1142).

10.    Delaware recognizes three types of prejudice:

(1) when the jury may cumulate evidence of the various crimes charged and find guilt when, if considered separately, it would not;
(2) when the jury may use evidence of one crime to infer a defendant's general criminal disposition in order to determine guilt of another crime/crimes;
(3) when a defendant may be subject to embarrassment or confusion in presenting different and separate defenses to different charges.[49]

11.    When deciding whether to grant severance, the Court must consider each submission on a case-by-case basis.[50] Factors to consider include the number of charges,[51] the temporal and geographic proximity between acts,[52] and the reciprocal admissibility of evidence.[53] The Court also considers judicial economy.[54]

12.    Here, the Court finds severance and bifurcation appropriate. The Court believes that there is a very real risk that a jury would be improperly influenced by the quantity and seriousness of Gibson's charges. It also finds that the facts underlying all counts are not similar enough to justify a single trial.

---

[49] *Ashley v. State*, 85 A.3d 81, 84–85 (Del. 2014) (citing *Wiest v. State*, 542 A.2d 1193, 1195 (Del. 1988)).
[50] *Lampkins v. State*, 465 A.2d 785, 794 (Del. 1983).
[51] *McKay*, 382 A.2d, at 262.
[52] *State v. Hardy*, 2019 WL 4678123 (Del. Super. 2019).
[53] *Wiest*, 542 A.2d, at 1196 n. 3 (citing *Bates*, 386 A.2d at 1142); *see Getz v. State*, 538 A.2d 726, 734 (Del. 1988) (outlining the six guiding factors in determining admissibility of evidence of other crimes).
[54] *Mayer v. State*, 320 A.2d 713, 717 (Del. 1974).

13.    After carefully considering the parties' submissions and relevant caselaw, the Court adopts its own three-trial division.  Trials will be set according to the following groups of charges: Group I – "business robberies"[55] and threats of bodily harm/death (Basilio (counts 1–8), Wright (counts 9–17), Almansoori (counts 18–22), and Collins (counts 30–34)); Group II -  the "confrontation on the street" (Harris (counts 23– 29)); and Group III -  drug-related charges (counts 35–41).

14.    In conformity with Rule 8(a), the above division groups offenses that are "of the same or similar character."  The new division also addresses *McKay*'s "sheer mass" concern by reducing the number of charges Gibson faces during any given trial.  By far, the largest number of counts a jury will consider will be in the Group I trial.  That trial will resolve a total of 27 charges.  Severing the PFBPP charges and trying them in a bifurcated trial results in the jury being asked initially to consider 23 charges from four separate incidents.  Simplifying the work of the jury is the fact that of those 23 charges, 10 of them are PFDCF charges paired with corresponding felony counts.  Further simplifying the jury's task is the fact that each felony murder charge is paired with a robbery charge. When viewed in this fashion, the Court is confident that the jury will not be overburdened or confused by the "sheer mass" of charges, nor will Gibson be prejudiced by a joint trial of these counts.

---

[55] Legal and otherwise.

15. More specifically, the Court agrees with Gibson that the robbery, the robbery-homicides, and the robbery-attempted homicide should be given their own trial. These offenses are "of the same or similar character."[56] The Court finds that the Wright counts should be tried along with the Basilio, Almansoori, and Collins robbery- homicide/attempted homicide counts. Distinguishing between legitimate and illegitimate money-making enterprises is an artificial distinction. Here, the State alleges Gibson, armed with a firearm, entered Metro PCS, a home, a deli, and a Rite Aid and harmed or threatened to harm people for the purpose of stealing the proceeds of a money making enterprise.[57] The common thread that ties the Basilio, Wright, Almansoori, and Collins incidents together is exactly that - Gibson's choice to rob money-making enterprises. The unifying thread is that these charges are of the "same or similar character" and are part of a common scheme or plan to acquire money, thus warranting a joint trial.

16. When it comes to the "confrontation on the street," it appears to the Court that what allegedly happened to Harris is a robbery by happenstance - an early morning chance encounter on the street. The character of this set of offenses is fundamentally dissimilar to the "business robberies" as well as any of Gibson's drug-related offenses.

---

[56] Def.'s Motion to Sever Charges, at ¶ 11; 13, D.I. 45.
[57] State's Resp. to Def.'s Motion to Sever Charges, *passim,* D.I 55.

17. The drug-related charges should be tried separately also. While Gibson was arrested allegedly wearing Wright's sling bag with drugs in it,[58] the Court does not find there to be logical nexus between these drug offenses and the alleged street-robbery, or the finance-focused "business robberies" with their threats of bodily harm and deaths. So, therefore, it is appropriate for these three categories of offenses to be tried separately.

18. The Court finds that justice similarly calls for bifurcation of the PFBPP counts. The Court does not believe that a jury could compartmentalize determinations of guilt. There is a serious risk that a jury, being advised that Gibson was prohibited from possessing a firearm by virtue of a felony conviction, would infer a general criminal disposition, impairing his constitutional right to a fair trial.[59] Therefore, bifurcation of the PFBPP charges is ordered.[60] Bifurcation of the Possession of Ammunition by a Person Prohibited ("PABPP") and Possession of a Deadly Weapon by a Person Prohibited ("PDWBPP") charges in the drug case is ordered as well for the same reasons.

19. For the reasons described above, the Court **GRANTS** Gibson's motion. It adopts a different three-trial grouping of charges, however. Group I shall be robberies and threats of bodily harm/death (Basilio (counts 1–8), Wright (counts 9–

---

[58] *Id.,* at ¶ 23.
[59] *See e.g.*, *Monceaux v. State*, 51 A.3d 474 (Del. 2012).
[60] *Id.*

17), Almansoori (counts 18–22), and Collins (counts 30–34)). Within Group I counts 8, 17, 22, and 33 (all PFBPP) shall be severed and tried as part of a bifurcated trial. Group II shall be the "confrontation on the street" (Harris (counts 23– 29). Count 29 (PFBPP) shall be severed and tried as part of a bifurcated trial. Group III shall be the drug-related charges (counts 35–41). Counts 39, 40, and 41 (PABPP, PFBPP and PDWBPP, respectively) shall be severed and tried as part of a bifurcated trial.

20. **Motion for Disclosure of Non-Recorded Portions of Witness Statements.**[61] Gibson asks the Court to compel the State to produce the full recordings of witness interviews.[62] He claims that several recordings "end before the interview's natural conclusion"[63] and/or make reference to conversations between witnesses and officers/detectives outside of the interview room.[64] If full recordings are not available, Gibson asks for the interviewing detectives to provide written reports explaining why the interviews were not fully recorded, present summaries of the interactions, and describe when and where the interviews were conducted.[65]

---

[61] D.I. 42.
[62] *Id.*
[63] *Id.,* at ¶ 4.
[64] *Id.,* at ¶ 7.
[65] *Id.,* at ¶ 8 (citing Super. Ct. Crim. Rule 16(d)(1); ERCI Act).

21.     The State agrees that some recordings end somewhat unnaturally, but states that Gibson has the full recordings.[66] The State also asserts that Gibson did not provide enough information about the affected interviews for them to respond further.[67]

22.     The only substantive information before the Court about the allegedly incomplete interviews is Gibson's descriptions of two, in his words, "salient" examples of questionable interview-endings.[68]   This limited information is not enough for the Court to decide the motion.   The Court, therefore, **DEFERS** a decision until the record is developed more fully.   Gibson should give the State a list of interviews that concern him so that the State may respond more fully and with particularity.[69]

23.     **Motion to Suppress Defendant's Statement.**[70]   Gibson asks the Court to suppress his statements that were elicited in violation of *Miranda* and Delaware

---

[66] State's Resp. to Def.'s Motion for Disclosure of Non-Recorded Portions of Witness Statements, D.I. 57.

[67] *Id.*

[68] Def.'s Motion for Disclosure of Non-Recorded Portions of Witness Statements, at ¶ 4, D.I. 42.

[69] *See,* State's Resp. to Def.'s Motion for Disclosure of Non-Recorded Portions of Witness Statements, D.I. 57.

[70] D.I. 40.

law.[71]  The State acknowledges that the statements are inadmissible in their case-in-chief.[72]  It, however, reserves the right to use the statements for impeachment.[73]

24.    The statements at issue were obtained on June 8, 2021 after Gibson was arrested in connection with the Rite Aid robbery and brought to the Wilmington Police Station for questioning.[74]  While there, Wilmington Police Detective Curley *Mirandized* Gibson who, in turn, invoked his right to remain silent.[75]  Though Wilmington Police "scrupulously honored" this invocation,[76] detectives from the Philadelphia Police Department did not.[77]  Philadelphia Police questioned Gibson without re-*Mirandizing* him and, instead, attempted to dissuade him from remaining silent and question him about the death of his mother.[78]  Eventually, the Philadelphia Police did extract certain information from Gibson that prosecutors in Delaware and Pennsylvania may find useful.[79]

---

[71] *Miranda v. Arizona*, 384 U.S. 436 (1966); Def.'s Motion to Suppress Defendant's Statement, at ¶ 11, D.I. 40.
[72] State Resp. to Def.'s Motion to Suppress Defendant's Statement, D.I. 57.
[73] *Id.*
[74] Def.'s Motion to Suppress Defendant's Statement, at ¶ 2, D.I. 57.
[75] *Id.*
[76] *Id.*
[77] *Id.,* at ¶ 3–5.
[78] *Id.*
[79] *Id.,* at ⫐ 5.

25.     The State agrees that statements obtained by the Philadelphia Police violated *Miranda* and are not admissible in the State's case-in-chief.[80]   This conclusion is supported by both state and federal law.[81]

26.     Both state and federal law allow the State use otherwise inadmissible statements for impeachment.[82]   However, this allowance is not absolute. The State must show that "the trustworthiness of the evidence satisfies legal standards."[83]

27.     Since the parties have not litigated trustworthiness, the Court reserves judgment on whether Gibson's otherwise inadmissible statement to the Philadelphia Police may be used for impeachment purposes until the issue is presented directly to the Court.   Since state and federal law clearly require Gibson's statements to the Philadelphia Police to be suppressed, the Court **GRANTS** his Motion to Suppress Defendant's Statement.

28.     **Motion to Suppress Evidence Seized from Defendant's iPhone.**[84]   In his May 3, 2022 motion, Gibson asks the Court to suppress evidence seized from his

---

[80] State's Resp. to Def.'s Motion to Suppress Defendant's Statements, D.I. 57.

[81] *See Harris v. New York*, 401 U.S. 222 (1971); *Oregon v. Hass*, 420 U.S. 714 (1975); *Bradley v. State*, 559 A.2d 1234, 1246 (Del. 1989) (citing *Harris*, 401 U.S. 222).

[82] *See, e.g.*, *Harris*, 401 U.S. 222; *Hass*, 420 U.S. 714; *Foraker v. State*, 394 A.2d 208 (Del. 1978).

[83] *Harris*, 401 U.S. at 224 (explaining that statements obtained in violation of *Miranda* may be used if the defendant takes the stand and for impeachment purposes "provided of course that the trustworthiness of the evidence satisfies legal standards"); *see also Foraker*, 394 A.2d at 212 (quoting *id.*)

[84] D.I. 41.

iPhone.[85] The State argues that Gibson relies on the wrong search warrant and that the Court should, therefore, not rule on the motion at this time.[86]

29.   On June 23, 2021, Detectives from Elsmere Police and Wilmington Police applied for a search warrant for the iPhone Gibson had during his June 8, 2021 arrest.[87]   The police requested "the digital contents of 'any and all attached storage devices' from April 27, 2021 to June 8, 2021."[88]   This application requested all calls, texts, multimedia messages, photos, and "'any and all information that may identify a possible owner of said phones as well as any information related used or intended to be used for' Murder First Degree and Robbery First Degree."[89]

30.   On November 8, 2021, the police obtained a second cell phone warrant.[90]   This warrant "was similar in substance to the first but refined its scope."[91] The State gave Gibson this latter warrant on May 9, 2022.[92]

---

[85] Def.'s Motion to Suppress Evidence Seized from Defendant's iPhone, D.I. 41.
[86] State's Resp. to Def.'s Motion to Suppress Evidence Seized from Defendant's iPhone, D.I. 57.
[87] Def.'s Motion to Suppress Evidence from Defendant's iPhone, at ¶ 2–3, D.I. 41.
[88] *Id.* at ¶ 3 (citing the June search warrant).
[89] *Id.*
[90] State's Resp. to Def.'s Motion to Suppress Evidence from Defendant's iPhone, D.I. 57.
[91] *Id,.* at n. 1.
[92] *Id.*

31. The crux of Gibson's argument is that the June warrant amounts to a "general warrant" in violation of his state and federal constitutional rights.[93] He argues that the June warrant fails both the particularity and nexus requirements for a valid warrant.[94] Gibson underscores his arguments by pointing to the well-established need for "particular sensitivity" when dealing with cell phone searches.[95]

32. The State responds that it is the November warrant, not the June one, that applies because it is the one from which the police obtained evidence.[96] The State cites to *State v. Carter*[97] to bolster its contention that Gibson "should be afforded the opportunity to address the legal effect of the subsequent warrant before this Court is asked to rule on the admissibility of cell phone contents."[98]

33. The Court agrees. Gibson did not have the opportunity to address the November 8, 2021 warrant because he only received that warrant a week after submitting the motion currently before the Court.[99] Judgment is, therefore,

---

[93] Def.'s Motion to Suppress Evidence from Defendant's iPhone, at ¶ 15 (citing U.S. Const. amend. IV; Del. Const. art. I § 6; 11 *Del. C.* § 2306); *see id. passim,* D.I. 41.
[94] *Id.* at ¶ 12.
[95] *Id.* at ¶ 9 (quoting *Buckham v. State*, 185 A.3d 1, 18 (Del. Super. 2018)).
[96] State's Resp. to Def.'s Motion to Suppress Evidence from Defendant's iPhone, D.I. 57.
[97] 2022 WL 1561537 (Del. Super. Ct. 2022).
[98] *Id.*
[99] May 3, 2022, and May 9, 2022, respectively.

**DEFERRED** to allow Gibson to submit a new motion addressing the November warrant, the warrant upon which the State relies.

34.     **Motion for Identification of 404(b) Evidence.**[100]  Gibson asks the State to identify 404(b) evidence it intends to introduce at trial.  The State asserts that the Court's ruling on Gibson's Motion to Sever dictates which 404(b) evidence it will attempt to introduce, but, in any event, it intends to limit that evidence to evidence from the current indictment.[101]

35.     Ruling on this motion is premature.  The Court agrees that its ruling on Gibson's Motion to Sever may affect how the parties prepare for trial and the admissibility of evidence at each trial. The Court **DEFERS** ruling on the Defendant's Motion for Identification of 404(b) Evidence in order to allow the State to consider the Court's decision on the Defendant's Motion to Sever Charges.

36.     **Motion to Exclude Admission of Photo Lineup.**[102] Gibson asks the Court to exclude his identification from a six-pack photo lineup that took place on June 15, 2021.  The State opposes.[103]

37.     The Court has reviewed the lineup, submitted under seal.  It notes that the photos are of six black men, all with similar facial structures, facial hair, and

---

[100] D.I. 39.
[101] State's Resp. to Def's Motion for Identification of 404(b) Evidence., D.I. 57.
[102] Def.'s Motion to Exclude Admission of Photo Lineup, D.I. 44.
[103] State's Response to Def.'s Motion to Exclude Admission of Photo Lineup, D.I. 56.

forward-looking gazes. Witnesses 1 and 2 (whose names are withheld as part of this case's Protective Order) were given the lineup and asked to identify "Keith Gibson," or "The Beast," a nickname for Gibson.[104] Neither witnessed the crimes in the current indictment, but Gibson concedes that both had sufficient interaction with Gibson to identify him.[105] Both identified Gibson.[106]

38.    Gibson does not allege that the lineup was improperly administered, that Gibson was misidentified, or that there were physical inaccuracies. The issue before the Court is whether Gibson's eyes are so different from the others in the array that including his photo would be unduly prejudicial.

39.    Gibson describes his photo as "quite unflattering" and likens his look to a "deer-in-headlights."[107] He speculates that police may have had nefarious intentions in using that photo rather than, for example, a more recent mugshot.[108] He points to the possibility that since eyewitnesses described the suspect as having a "distinct 'look in his eyes'" that the police purposely chose a photo of Gibson where he had a similar presentation.[109] Gibson claims that the State would not suffer any

---

[104] *See id.,* at ¶ 2–3; Def.'s Motion to Exclude Admission of Photo Lineup at ¶ 2, D.I. 44.
[105] *Id.,* at ₱ 3.
[106] State's Response to Def.'s Motion to Exclude Admission of Photo Lineup at ¶ 2, D.I. 56.
[107] Def.'s Motion to Exclude Admission of Photo Lineup at ¶ 4, D.I. 56.
[108] *Id.,* at ¶ 7–8.
[109] *Id.,* at ¶ 8.

prejudice if the lineup is not admitted and that any probative value from the lineup is substantially outweighed by the danger of unfair prejudice under D.R.E. 404(b).[110]

40.    The State responds that they only intend to use the lineup if either witness fails to identify Gibson during trial.[111] Accordingly, the State argues that "the lineup and the photo contained therein have evidentiary value as a prior statement of the witness."[112] So, excluding Gibson's photo could "drastically limit the State's options should the witnesses fail to [identify Gibson during trial.]"[113]

41.    The State notes that Gibson failed to provide any supporting caselaw[114] and asserts that *Fluodiotis v. State*, arguably the case most comparable to this one, does not support exclusion.[115] It argues that here, unlike in *Fluodiotis*, the array will not inflame the jury's passion and that Gibson's photo "*is* relevant to identification."[116]

42.    After reviewing both parties' submissions, *Fluodiotis*, and examining the array, the Court finds no reason to exclude Gibson's photo.  While Gibson's eyes

---

[110] *Id.,* at ¶ 9.
[111] State's Resp. to Def.'s Motion to Exclude Admission of Photo Lineup, at ¶ 6., D.I. 56.
[112] *Id.,* at ¶ 15.
[113] *Id.,* at ¶ 14.
[114] *Id.,* at ¶ 9.
[115] *Id.,* at ¶ 11–13 (citing *Fluodiotis v. State*, 726 A.2d 1196 (1999)).
[116] *Id.,* at 13 (emphasis in original).

are more open than the other men's, the Court is unpersuaded by Gibson's claim of hypothetical improper police photo-selection and does not find that the photo would inflame the jury's passion or result in any undue prejudice. The Court is not convinced that a non-eyewitness identification that it intended to be introduced only if an in-court identification fails, would prejudice the defendant.[117] Gibson's Motion to Exclude Admission of Photo Lineup, therefore, is **DENIED**.

43. For the reasons stated above, the Court **GRANTS** Gibson's Motion to Sever Charges and his Motion to Suppress Defendant's Statement, **DENIES** his Motion to Exclude Admission of Photo Lineup, and **DEFERS** deciding his Motion for Disclosure of Non-Recorded Portions of Witness Statements, his Motion to Suppress Evidence Seized from Defendant's iPhone, and his Motion for Identification of 404(b) Evidence. The Court will set deadlines for the deferred motions once defense counsel's pending Motion to Withdraw is resolved.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

---

[117] Significantly, it appears that eyewitnesses were not shown the photograph of Gibson with "bulging eyes." Def.'s Motion to Exclude Admission of Photo Lineup, at ¶ 7, D.I. 44. Had they been shown such a photograph, arguably it might have given rise to a contention that the photo spread was unduly suggestive.