IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EL HAJJ MATTHEWS, | § | |
| | § | No. 485, 2023 |
| Defendant Below, | § | |
| Appellant, | § | Court Below–Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID Nos. 2103009879 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |
| | § | |

Submitted: November 6, 2024
Decided: December 2, 2024

Before **SEITZ**, Chief Justice; **LEGROW** and **GRIFFITHS**, Justices.

## <u>**ORDER**</u>

On this 2nd day of December 2024, after careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

1.      Defendant El Hajj Matthews was convicted of two counts of second-degree reckless endangering and possession of a firearm by a person prohibited. For these charges, Matthews had stipulated to a bifurcated trial: an "A-Trial" for the reckless endangering charges, and a "B-Trial" for the possession of a firearm charge. On appeal, Matthews claims that bifurcation of the charges was insufficient. Matthews contends that the trial court should have taken an additional step to sever the trial and empanel a new jury to hear the firearm charge in the B-Trial. Matthews argues that a change in a witness' testimony in the A-Trial compelled Matthews'

counsel to ask for a lesser-included offense instruction on the reckless endangering charge. According to Matthews, this placed him in the dilemma of having to concede that he had a firearm to show the State could not meet its burden on the first-degree reckless endangering charges.

2. This argument is without merit. Adding the lesser-included instruction did not require Matthews' counsel to concede possession. Matthews' defense in both trials was based on mistaken identity, making it difficult for him to show any prejudice from the court's decision to deny him a separate jury in the B-Trial. It also would have been inefficient and unnecessary for the trials to proceed before separate juries. We therefore affirm the Superior Court's judgment.

3. On the evening of March 16, 2021, Frank Singleton drove his girlfriend and his acquaintance, Micheal Evans, to East 24th Street in Wilmington, Delaware.[1] Singleton parked outside house No. 1308 and dropped off his girlfriend.[2] She had some "business" to attend to on the street.[3] While parked, Defendant El Hajj Matthews walked up the street, and as he made his way towards the house, Evans asked Matthews for a "light" for his cigarette.[4] Matthews became irate and told the

---

[1] App. to Opening Br. at A50.

[2] *Id*. at A51.

[3] *Id*. at A52.

[4] *Id*. at A51.

men to get out of the neighborhood.[5]  Singleton could see that Matthews had his hand on a gun.[6]

4.      Before shots were fired, a woman standing in the doorway of No. 1308 told Matthews, "don't do that, I'm going to be put out."[7]  Matthews followed the warning initially and went inside the house.[8] Moments later, Singleton heard gunfire and saw Matthews standing in the doorway holding a black handgun.[9]  Singleton ducked as he heard more shots.[10]  Singleton testified that he "thought he was hit."[11] Singleton, however, conceded that Matthews fired the first gunshot "in the air" and that Matthews never shot the gun in his direction.[12]

5.      The sounds from the gunshots were picked up by ShotSpotter, which dispatched Corporal Scott Gula and Lieutenant Kimberly Pfaff of the Wilmington Police Department.[13]  The officers quickly arrived and arrested Matthews, who was in the backyard.[14]  After the arrest, the officers searched the home, recovering two

---

[5] *Id*. at A50–51.

[6] *Id*. at A51, A53.

[7] *Id*. at A51.

[8] *Id*. at A50.

[9] *Id*. at A50–51.

[10] *Id*.

[11] *Id*. at A50.

[12] *Id*. at A53.

[13] *Id*. at A45, A55 (ShotSpotter is technology that can identify whether a gunshot was fired in an area and then alert/dispatch law enforcement).

[14] *Id*. at A57-58.

shell casings by the front door and a 9mm black handgun in a second-floor bedroom closet.[15] The officers later reviewed surveillance footage from a Ring-camera that captured a man, whom Singleton identified as Matthews, walking past Singleton's car and up to house No. 1308.[16] The Ring-camera captured no footage of the shooting.[17]

6. Matthews faced two counts of first-degree reckless endangering, possession of a firearm during the commission of a felony ("PFDCF"), and possession of a firearm by a person prohibited ("PFBPP").[18] The State decided to not prosecute the PFDCF charge, and the parties stipulated to a bifurcated trial, separating the reckless endangering charges from the PFBPP charge.[19]

7. On the first day of trial, Evans did not appear, but Singleton did appear and testified. After Singleton's testimony, Matthews moved to sever, asking for a separate jury in the B-Trial for the PFBPP charge.[20] He argued that based on Singleton's statement—that he saw Matthews fire a gun "in the air"— the jury could find he had a firearm but be not guilty of reckless endangerment, as he did not point

---

[15] *Id.*

[16] *Id.* at A47, A49, A51–52, A58–59.

[17] *Id.* at A59.

[18] *Id.* at A10–11.

[19] *Id.* at A64.

[20] App. to Answering Br. at B2–4.

the gun at anyone.[21]  With separate juries, Matthews believed that he could argue that the reckless endangering charge did not rise to the level of first-degree conduct, without placing him in a position of conceding the PFBPP charge reserved for the B-Trial.

8.    The Superior Court denied the motion, concluding that Matthews could ask for a lesser-included offense instruction without conceding possession of the firearm.[22]  The court also raised the inefficiency of having to empanel another jury when the parties already agreed to bifurcate the reckless endangering charges from the firearm charge.[23]  After the court's ruling, Matthews asked for the lesser-included offense instruction on the reckless endangering charges and advanced a mistaken identity defense in both trials.[24]  The jury returned guilty verdicts on two counts of second-degree reckless endangering and PFBPP.[25]

9.    On appeal, Matthews challenges the court's denial of his motion to sever, arguing that presenting a defense with a lesser-included offense instruction on

---

[21] *Id*. at B4.

[22] App. to Opening Br. at A78–79.

[23] *Id*.

[24] *Id*. at A97–99, A109.

[25] *Id*. at A7.

the reckless endangering charges forced him to concede the PFBPP charge. To avoid this "conundrum," he believes he had a right to two separate juries.[26]

10. This Court reviews the Superior Court's denial of a motion to sever for abuse of discretion.[27]

11. Delaware Superior Court Criminal Rule 8 allows joinder of offenses when "the offenses charged are . . . based on the same act or transaction or on two or more acts or transactions connected together."[28] If, however, joinder of the offenses unfairly prejudices the defendant, the court may sever the offenses and order separate trials.[29] A defendant may suffer from prejudice when:

> 1) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find; 2) the jury may use the evidence of one of the crimes to infer a general criminal disposition of the defendant in order to find guilt of the other crime or crimes; and *3) the defendant may be subject to embarrassment or confusion in presenting different and separate defenses to different charges.*[30]

12. We find no prejudice here. As the Superior Court held, "the defendant, while arguing the lesser included, can still maintain that the State has not met its

---

[26] Opening Br. at 7.

[27] *Wiest v. State*, 542 A.2d 1193, 1195 (Del. 1988).

[28] Super. Ct. Crim. R. 8(a).

[29] Super. Ct. Crim. R. 14.

[30] *Wiest*, 542 A.2d at 1195 (citing *State v. McKay*, 382 A.2d 260, 262 (Del. 1978)) (emphasis added). Matthews relies on the third category.

6

burden of proof without admitting to possession of the gun."[31]  Under this ruling, Matthews could argue against possession *and* that the conduct, whosoever it was, did not rise to the level of first-degree reckless endangering.  These are not mutually exclusive arguments—they could be made in the alternative without any prejudice.  Contrary to Matthews' argument, the lesser-included instruction did not "place defense counsel in a conundrum," nor did it create "dilemmas."[32]

13.  Indeed, Matthews argued against possession in both trials and succeeded in obtaining a lesser-included offense on the reckless endangering charges.  Matthews argued that Singleton mistakenly identified him, pointing to factors such as the poor lighting on the scene, the inconsistent testimony of Singleton, and the absence of any shooting on the video footage.  By relying on a mistaken identity defense, Matthews was able to dispute that he had a firearm.

14.  That he was unsuccessful on the firearm charge was not due to any prejudice arising from the lesser-included offense instruction.  Nothing in the language of the lesser-included instruction required Matthews to concede possession.[33]  The lesser-included offense instruction relates to reckless

---

[31] App. to Opening Br. at A78–79.

[32] Opening Br. at 7.

[33] *See* App. to Opening Br. at A102 ("In this circumstance, or if you're unable to reach a unanimous verdict on reckless endangering first degree, you may consider the lesser included offense of reckless endangering second degree. In order to find defendant guilty of reckless endangering in the second degree, you must find that the State has proved the following two elements beyond a reasonable doubt . . .You must find the State has proved two elements beyond a reasonable doubt

endangerment and the risk of harm created. First-degree reckless endangerment requires that the person engage "in conduct which creates a substantial risk of death to another person."[34] The charge lowers to second-degree when the conduct "creates a substantial risk of physical injury to another person."[35] The lesser-included offense instruction therefore did not have any prejudicial bearing here on the question of possession in moving from first-degree to second-degree reckless endangerment.

15. Furthermore, the jury would have heard the same evidence showing Matthews had a firearm in both trials. Singleton testified that he saw Matthews holding a handgun when he responded to Evans' request for a light. The police also uncovered a handgun at the home Matthews entered that matched Singleton's description. Singleton's testimony about the direction that Matthews fired the gun related to the risk of harm Matthews' conduct created. It had little to no bearing on the question of possession such that he had the right to a separate jury to hear the PFBPP charge.[36]

---

for reckless endangering second degree; the defendant engaged in conduct that created a substantial risk of physical injury to Frank Singleton, Count I, or Michael Evans, Count II, and the defendant acted recklessly.").

[34] 11 *Del. C.* § 604.

[35] 11 *Del. C.* § 603.

[36] Matthews' counsel argues that he would be deemed ineffective if he failed to ask for the lesser-included offense. However, this Court held in *White v. State* that counsel is not required to request such an instruction if tactical reasons exist for doing so. 173 A.3d 78, 81–82 (Del. 2017). Here, Matthews' counsel took an "all or nothing approach" in arguing Matthews was not guilty for *any* offense because "this was a case of mistaken identity." Answering Br. at 22.

16. Lastly, the judicial efficiencies of presenting this case before a single jury outweighed any prejudice. The charges in both trials were based on the same acts and involved the same witnesses, rendering a newly empaneled B-Trial duplicative of the A-Trial.[37] The trial court was therefore within its discretion to deny the motion to sever.

17. We AFFIRM the Superior Court's judgment.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

---

[37] Super. Ct. Crim. R. 8(a).