# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | **)** | |
| | **)** | |
| v. | **)** | |
| | **)** | |
| ANDREW WILLIAMS, | **)** | **C.A. No. 2403009628; 2403011045;** |
| Defendant. | **)** | **2403009214; 2403010609;** |
| | **)** | **2403009314** |
| | **)** | |
| | **)** | |
| | **)** | |
| | **)** | |

Submitted: October 15, 2025
Decided: November 14, 2025

## MEMORANDUM OPINION

*Upon consideration of Defendant's Motion to Sever:*
**GRANTED**.

Nichole Whetham Warner, Esquire, DEPARTMENT OF JUSTICE, Wilmington, Delaware. *Attorney for the State of Delaware.*

Kevin P. Tray, Esquire, LAW OFFICE OF KEVIN P. TRAY, Wilmington, Delaware; Natalie Woloshin, Esquire, COLLINS PRICE WARNER WOLOSHIN, Wilmington, Delaware. *Attorneys for Defendant.*

**BUTLER, R.J.**

The defense has moved to sever the charges in this indictment, which consolidates three separate sex offense investigations against the Defendant. The issue has been fully brief, argued and supplemented by the State. After due consideration, the Court grants the motion to sever.

**FACTUAL BACKGROUND**

We begin with a chronological recitation of the events leading to the indictment as alleged by the State. We note that the State places great weight on the similarities in detail of the three sexual assaults. The State believes that specific positions, behaviors and words used during the sex acts depict a modus operandi showing both the identity of the Defendant and the victims' nonconsent. We will spare the reader other details, except to note that the assaults do indeed share similarities.

*Case #1 – Victim "T.S."*

On May 11, 2023, a woman identified as "T.S." reported that the previous day, she had come to Wilmington with a girlfriend to buy drugs. She ended up at the Defendant's house on Oakmont Drive and she and her friend spent the day there. They fell asleep in Defendant's living room. Defendant woke T.S. while her

2

girlfriend slept and directed her to an upstairs bedroom where they both ingested drugs. This was followed by the Defendant's sexual assault of T.S.

The next morning, T.S. woke her girlfriend. They departed the residence and she promptly reported the rape. But during the interview process with the police, she left the station, leading the police to conclude that she did not wish to cooperate or pursue the matter further.

*Case #2 – Victim "S.W."*

Some ten months later, the victim in Case #2, S.W., reported that she met the Defendant near the Wilmington Riverfront on March 16, 2024. On this date, she had a serious infection on her arm, and he helped her get to the Wilmington Hospital for treatment. They left the hospital, walked around the city and ultimately ended up at Defendant's residence on Oakmont Drive in Wilmington. There, he offered her fentanyl, which she accepted. He then sexually assaulted S.W.

S.W. escaped the residence when someone else came to the Oakmont Drive residence to purchase drugs. She managed to get out, flagged down a stranger and called 911.

*Case #3 – Victim "A.T."*

Case #3 happened the day after Case #2. In this case, the victim knew the Defendant and had known him for many years. They had previously shared drugs

3

together and had engaged in consensual sexual activity. On this day, she went to the Defendant's house, they smoked crack together and she was sexually assaulted by the Defendant.

*The Defendant's Statements*

Because the danger of unfair prejudice looms large in a joinder and severance analysis, we are well served to understand not only the claims, but also the known or likely defenses. Here, the Defendant made a lengthy statement to the police. In the transcribed statement, the Defendant gave a different "explanation" for each of the alleged assaults.

As to the 2023, Case #1, the Defendant told the police he never met the complainant. He was not questioned further concerning this offense.

As to the first March 2024 case – Case #2 – the Defendant told police he has known the complainant for some time, and she has previously been to his residence and stayed there for a brief period when she was homeless. The Defendant told the police he had consensual sex with S.W. in the previous year but that had been several months previous when she stayed there.

He agreed that he escorted S.W. to the Wilmington Hospital for treatment of her arm, but said they separated after her hospital visit. When confronted with

4

forensic evidence suggesting she had in fact been at the residence more recently, the Defendant denied any sexual activity with her in March 2024.

As to the incident the next day – Case #3, the Defendant said A.T. was a frequent sexual partner who took drugs when they had sex. He agreed they had consensual sex in March and denied ever having non-consensual sex with A.T., expressing shock that she would level such a charge against him.

## ANALYSIS

The general rule for joinder of offenses in a single indictment is spelled out in Rule 8:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.[1]

The defense here does not and cannot dispute that the three incidents joined in the indictment are "of the same or similar character" and they were properly indicted together. The question of severing them is dealt with in Rule 14. It provides that:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate

---

[1] Super. Ct. Crim. R. 8.

trials of counts, grant a severance of defendants or provide whatever other relief justice requires.[2]

While these words are easy enough to articulate, the unfair prejudice to be avoided – as opposed to highly probative, reasonably related evidence of similar character – is a good bit less so. This is particularly true in sex offense prosecutions, where evidence of other sex offenses can easily give rise to a conclusion that the defendant is simply a sex offender, liable to commit sex crimes against anyone within his class of victims.[3]

There are three types of prejudice that must be considered when multiple offenses have been joined in a single indictment: 1) the danger of cumulating the evidence of each charge and convicting on the basis of the aggregate of evidence and not the evidence of each charge independently, 2) inferring a general criminal disposition of the defendant and convicting on that basis instead of the evidence, and 3) the danger of confusion in cases where the defendant presents different defenses to the different charges and victims.[4]

---

[2] Super. Ct. Crim. R. 14.

[3] Indeed, Federal Rule of Evidence 413 specifically allows that in a trial for sexual assault, evidence of the defendant's commission of other sexual assaults *shall be admitted*. The federal rule is thus an exception to the general prohibition on permitting "propensity evidence."

[4] *State v. McKay,* 382 A.2d 260, 262 (Del. Super. Ct. 1978); *Weist v. State*, 542 A.2d 1193, 1195 (Del. 1988).

*The Boughner Case*

The State "asks the Court to follow the reasoning in *State v. Boughner*,[5] where the Court considered severance of four separate and unrelated abuse victims."[6] Doing so is as good a place as any to begin our review.

Robert Boughner was charged in a seventeen-count indictment with having sexual relations with four different minor boys. In each case, the defendant befriended the children, bought them gifts, invited them into his residence and eventually began sexually abusing them. The trial court denied the defendant's motion to sever fifteen of the counts, finding the charges were relevant to intent, modus operandi and identity.[7]

However, the Court did sever one count relating to a victim who was fifteen years old when he met the defendant. The victim alleged a single incident of sexual abuse, occurring two years after they met, so he had reached the age of majority at the time of the incident. The defendant claimed the sex was consensual. The Court severed this count on the basis that it would be "highly prejudicial" for the defendant to offer this separate and distinct defense.[8] Obviously, consent was not available to

---

[5] 1995 WL 19200095 (Del. Super. July 13, 1995).
[6] State's Resp. to Def.'s Mot. to Sever, ¶31.
[7] *Boughner*, 1995 WL 19200095, at *4.
[8] *Id.* at *6.

the defendant as to the remaining victims and the Court denied severance as to the minors.

Thus, *Boughner* recognizes that severance may be necessary in cases where evidence would be otherwise admissible to prove motive, intent or modus operandi but the defendant presents a defense that is inconsistent with his defense to other charges.

*The Conaway Case*

*State v. Conaway* is a thorough treatment of the question of joinder and severance in the context of sex offenses in which consent is asserted. In *Conaway*, the state charged that the defendant had "date raped" six women after initial consensual encounters. As here, the "core question(s) for each case" was "whether the alleged victim consented to sexual intercourse in that case."[9]

One of the critical considerations in both *Conaway* and this case is the admissibility of each offense in a separate trial of the others.[10] Analyzing this element of prejudice relies upon the Supreme Court's six-part test articulated in *Getz v. State*.[11] As in *Conaway*, the State argues that evidence of each rape would be

---

[9] *State v. Conaway*, 2019 WL 3431594, at *10 (Del. Super. July 30, 2019).

[10] State's Resp. to Def.'s Mot. to Sever, ¶28. *See Weist*, 542 A.2d at 1195 n.3 ("[A] crucial factor to be considered . . . should be whether the evidence of one crime would be admissible in the trial of the other crime.").

[11] 538 A.2d 726 (Del. 1988).

8

admissible in a trial of the others to show motive, intent and modus operandi.[12] But the *Conaway* Court rejected similar arguments, quoting *Getz*: "no evidential purpose is served by proof that the defendant committed other intentional acts of the same type."[13]

The *Conaway* Court also addressed the common plan or scheme exception: "[W]hether a defendant raped others in other situation(s) is not relevant to whether the particular alleged victim consented to sexual intercourse with the defendant."[14] Put another way, again quoting *Getz*, "[r]epetition is not, in itself, evidence of a plan and other crimes of the sort with which he is charged cannot be admitted against the defendant under that guise."[15]

Finding that the proposed joint trial presented a likelihood that the jury would use the evidence for one of the improper purposes above, the *Conaway* Court concluded that "this is nothing but evidence of the defendant's trait to rape being introduced to prove that with regard to every other episode, defendant raped the alleged victim."[16]

---

[12] State's Resp. to Def.'s Mot. to Sever, ¶30.
[13] *Conaway*, 2019 WL 3431594, at *9 (quoting *Getz,* 538 A.2d at 733).
[14] *Id.* at *10.
[15] *Id.* at *9 (quoting *Getz*, 538 A.2d at 733).
[16] *Id.* at *10.

It is not possible to distinguish the logic or holding in *Conaway* from the evidence proffered in this case. The Court finds that, following the holdings in *Getz v. State* and *State v. Conaway*, and consistent with Rule 14 of the Rules of Criminal Procedure, the Court must order severance of the cases for trial.

**IT IS SO ORDERED.**

/s/ Charles E. Butler
Charles E. Butler, Resident Judge

10